Argued and submitted January 15, affirmed April 29, 1998

In the Matter of the Marriage of

Titilola Yetunde DENIS,
*Respondent,*
*and*

Gabriel Olujimi DENIS,
*Appellant.*

(9603-63255; CA A97046)

958 P2d 199

Robert Harris argued the cause for appellant. With him on the brief was Harris & Vigna.

No appearance for respondent.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Husband appeals an award of support in this annulment of a void marriage. We review *de novo* and affirm.

At the time of trial, husband was 43 and wife was 37. Both had been previously married. The parties were married in December 1993 and separated in January 1996. In May 1995, the parties learned that the United States Immigration & Naturalization Service did not recognize wife's divorce from her first husband.[1] On the advice of counsel, wife divorced her previous husband. Husband then refused to remarry wife.

Wife then brought this action entitled "Petition for Dissolution of Marriage, Express Domestic Partnership, Implied Domestic Partnership." Husband filed a response and counter petition, alleging that, at the time of the marriage ceremony, wife lacked the capacity to marry because she was already married. Husband sought, *inter alia*, a judgment "[a]nnulling this marriage." Following a hearing, the court entered a "Judgment of Annulment" declaring, according to the parties' stipulation, that the marriage was "annulled and void from the beginning based upon [wife] having another living husband at the time of her marriage to

---

[1] Wife has not appeared in this appeal. Before the marriage ceremony, wife did not have permanent residency status in the United States. In her trial memorandum, she stated that she is a citizen of Nigeria and applied for permanent residency status based on her marriage to husband, who is an American citizen. Wife had previously been married to and divorced from another Nigerian citizen. She further explained:

"The Immigration Service does not recognize a divorce unless the country granting divorce has jurisdiction over the parties as 'jurisdiction' is defined by the United States. As neither [wife] nor her first husband resided in Nigeria at the time of the divorce the Immigration and Naturalization Service decided that Nigeria did not have jurisdiction over [wife] and her first husband and determined that [wife] had never been divorced for immigration purposes. As the Immigration Service did not recognize [wife's] divorce, it refused to recognize the marriage of the parties [here] for Immigration purposes and did not give [wife] a green card."

Husband has refused to consent to wife's application for permanent residency. Wife's son from her previous marriage is a United States citizen. Wife testified that she has been in the United States for over seven years and has filed a hardship application to stay and to work. She anticipated that the application process would take five to six months.

[husband]." The judgment also awarded wife support of $1,200 for six months and $650 a month for an additional eight months.

■        On appeal, husband argues that the court was without jurisdiction to award "spousal" support when the marriage was void from the beginning. ORS 107.105 provides, in part:

> "(1)   Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:
>
> "* * * * *
>
> "(d)   For the support of a party, such amount of money for such period of time as it may be just and equitable for the other party to contribute[.]"

Husband argues that the issue is whether "marital annulment" includes a void marriage under ORS 107.005(1),[2] or only a voidable marriage under ORS 107.015.[3] Husband argues that only voidable marriages are within the statute and, thus, the court was without authority to award support.

---

[2] Under ORS 107.005(1),

"[a] marriage may be declared void from the beginning for any of the causes specified in ORS 106.020; and, whether so declared or not, shall be deemed and held to be void in any action, suit or proceeding in which it may come into question."

ORS 106.020(1) provides:

"The following marriages are prohibited; and, if solemnized within this state, are absolutely void:

"(1)   When either party thereto had a wife or husband living at the time of such marriage."

[3] ORS 107.015 provides:

"The annulment or dissolution of a marriage may be decreed for the following causes:

"(1)   When either party to the marriage was incapable of making such contract or consenting thereto for want of legal age or sufficient understanding;

"(2)   When the consent of either party was obtained by force or fraud;

"provided that in the situations described in subsection (1) or (2) of this section the contract was not afterward ratified."

Husband relies on the following language from *Dibble v. Meyer*, 203 Or 541, 546-47, 278 P2d 901, 280 P2d 765 (1955):

> "Void marriages are invalid from the beginning and may even be attacked collaterally. That is not true of voidable marriages. The additional relief as to support money, custody of children, property rights, etc., which the court is authorized to grant as part of its decree of annulment of a voidable marriage and for divorce is the same. ORS 107.100. In effect, and as a practical matter, no distinction whatever is made between postnuptial and antenuptial grounds for the termination of the marriage relation. In both cases the marriage relation is terminated by the decree, and the parties are prohibited from remarrying third persons until the expiration of six months thereafter. ORS 107.110."

*Dibble*, however, does not assist husband. In *Dibble*, the issue was whether the guardian of an incompetent person could continue a suit to annul the incompetent's allegedly voidable marriage after the incompetent had died. The court held that the guardian could not, as the incompetent's death terminated the marriage, and, thus, the court lost jurisdiction of the subject matter. *Id.* at 549. The language on which husband relies here is part of the court's explanation of procedural differences relating to void and voidable marriage. It does not answer whether a void marriage is within ORS 107.105.

As the question is one of statutory construction, it is to be answered by first examining the text and context. A marriage may be declared void in an annulment proceeding brought under ORS chapter 107. ORS 107.005; ORS 107.015; *see Dibble* 203 Or at 546 (either party may institute suit for annulment of a void marriage); *Lahey v. Lahey*, 109 Or 146, 153, 219 P 807 (1923) (court not empowered to annul bigamous marriage in absence of adequate pleading).[4] Under

---

[4] A void marriage also may be collaterally attacked in "any action, suit or proceeding in which it may come into question." ORS 107.005(1); *see Dibble v. Meyer*, 203 Or 541, 546, 278 P2d 901, 280 P2d 765 (1955) ("Void marriages are invalid from the beginning and may even be attacked collaterally. That is not true of voidable marriages."); *Emmons et al v. Sanders, et al*, 217 Or 234, 342 P2d 125 (1959) (in action concerning title to real property, trial court was correct in holding that marriage was void).

ORS 107.105(1)(d), a court has the authority to award support "[w]henever the court grants a decree of marital annulment." (Emphasis supplied.) In a judgment of annulment, the court may award support for "a party," ORS 107.105(1) (d); it is not limited to an award of "*spousal* support." Thus, text in context demonstrates that the court had the authority to award support to wife here.

Husband argues, however, that, because a void marriage has never legally existed, giving "the parties the statutory benefits of a marriage * * * is tantamount to recognizing a common law marriage," which Oregon does not do. Thus, husband contends, if support is awarded in the case of a void marriage, "it would reward those who enter into void marriages over those who just live together without the benefit of marriage." However, that is a policy argument that must be addressed to the legislature. Whether or not the legislature determines that it is "just and equitable" to make support available to a party who just "lives with" a partner, it has determined that equity may require support for a party who has sought the benefit of marriage even though the marriage is later declared void.[5]

Husband here sought annulment, the parties stipulated that the marriage was void *ab initio*, and the court entered a judgment of annulment so declaring. Under ORS 107.105, the court was authorized to award support in that judgment. On our *de novo* review, we agree with the trial court that it was just and equitable to do so in this instance in the amount awarded.

■　　Husband also assigns error to the award of spousal support of $650 for eight months. That amount represented husband's share of the parties' debts that he agreed should be paid as spousal support. He now seeks to repudiate that agreement and argues that we should not uphold it because the court was without authority to make the award. *See Fisher and Fisher*, 148 Or App 208, 213, 939 P2d 149 (1997) (court did not have authority to include interest obligation on equalizing judgment as spousal support for 48 months).

---

[5] That does not appear to be a "reward" but, rather, a legislative recognition of the intertwining personal and financial relationships that may result even though a marriage is actually "void."

Therefore, husband contends, the agreement is against public policy and we should not enforce it. We find no basis here to invalidate the parties' agreement. *See Shaffer v. Shaffer*, 57 Or App 43, 47, 643 P2d 1300 (1982) (court did not modify support award of property settlement agreement that included both support sums and property sums payable together as alimony); *Lockard and Lockard*, 89 Or App 640, *rev den* 306 Or 79 (1988) (parties' stipulation to property division that was fair and equitable was binding).

Husband's remaining assignment of error does not require further discussion.

Affirmed. No costs to either party.