Argued and submitted June 12, affirmed December 2, 2015, petition for review denied April 7, 2016 (359 Or 39)

In the Matter of the Marriage of

Adam Joseph SOUTHARD,
*Petitioner-Respondent,*
*and*

Kirsten Robine LARKINS,
*Respondent-Appellant.*

Jeffery LARKINS,
*Petitioner-Respondent,*

*v.*

Kirsten Robine LARKINS,
*Respondent-Appellant,*
*and*

Adam Joseph SOUTHARD,
*Respondent-Respondent.*

Multnomah County Circuit Court
120464547, 130565220;
A155057 (Control), A156528

364 P3d 1006

Adam L. Dean argued the cause and filed the briefs for appellant.

Andrew J. Ragland filed the brief for respondent Adam Southard.

No appearance for respondent Jeffery Larkins.

Before DeVore, Presiding Judge, and Garrett, Judge, and Schuman, Senior Judge.

DEVORE, P. J.

## DEVORE, P. J.

In this consolidated appeal, mother appeals a general judgment that dissolved her marriage to Adam Southard and granted him custody of AR and two other children. Mother also appeals a limited judgment in a paternity proceeding involving Jeffery Larkins, another husband to mother.[1] Finally, mother appeals the court's order denying her motion under ORCP 71 to set aside the dissolution judgment for lack of a valid marriage to Southard. Mother raises eight assignments of error. Assuming that her marriage to Southard was invalid, she challenges the court's authority to have awarded custody as in an ordinary dissolution. She challenges the paternity court's refusal to decide AR's custody. On the merits, she challenges the award to Southard of custody of three children—a decision we will not discuss at length.

We conclude, first, that mother did not properly present at trial the issue she now presents on appeal as to the validity of the Southard marriage and, second, that the court had authority, and certainly jurisdiction, to dissolve the marriage and to make its custody determination. On this record, the Southard marriage and the dissolution judgment were not void. We reject without written discussion mother's challenge to the limited judgment of the paternity court and her other assignments of error as to the dissolution judgment and post-trial motion. We affirm.

Mother requests *de novo* review of the trial court's custody determination. ORS 19.415(3). Although the parties' history is complicated, these judicial proceedings themselves do not make this the type of exceptional case that warrants *de novo* review.[2] Therefore, we decline to exercise *de novo* review. *See* ORAP 5.40(8)(c) (*de novo* review is appropriate in "exceptional cases").

---

[1] We refer to wife as "mother," her spouse in this dissolution as "Southard," and her spouse in another marriage as "Larkins".

[2] Mother contends that the judge in the dissolution proceeding should not have determined custody, because Larkins interposed an affidavit of prejudice as to the participation of that judge in the newly filed, separate, paternity proceeding. Nothing, however, prevented the judge from continuing to consider all dissolution matters, because she had already ruled on matters in that case. Larkins' motion was too late to provide a basis for disqualification of that judge as to ongoing dissolution matters. ORS 14.260(3).

We review for legal error the court's authority to dissolve the marriage, and we "state the facts consistently with those found by the trial court to the extent that there is evidence to support them." *Nice v. Townley*, 248 Or App 616, 618, 274 P3d 227 (2012); *see also Kirkpatrick and Kirkpatrick*, 248 Or App 539, 541 n 1, 273 P3d 361 (2012) (reviewing the facts consistently with the trial court's express and implied findings).

The sequence of events began when, in 2001, mother married Southard. During their first marriage, they had two children, H and S. In 2006, the marriage was annulled, and custody of the two children was awarded to mother.

Mother married Larkins in June 2007, and they divorced in February 2008, while mother was pregnant. On her initiative, that dissolution judgment ordered that "[t]he presumption that [Larkins] is the father of Wife's unborn child is rebutted and paternity is disestablished by this General Judgment."

When mother gave birth to AR in April 2008, Southard was present. Mother falsely told the hospital staff that she and Southard were married. Southard "signed the documents that were handed to him, not realizing that [mother] was asserting that she was married to him."[3] As a result, he was listed as the father on AR's birth certificate.

Mother remarried Larkins in August 2008. Mother remarried Southard in July 2009. Much later, mother filed an affidavit representing that the marriage certificate for the second Larkins marriage had not been recorded and that she believed "that the [second Larkins] marriage was never officialized."[4] In that affidavit, she explained that, at the time, "I did not believe [the second Larkins marriage] to be an official marriage."

---

[3] A letter from the Oregon Health Authority reported that "mother said at the hospital that she was married to Mr. Southard and listed him as the Husband/Father." At the conclusion of dissolution trial, the court made

"an affirmative finding that the—that Mr. Southard is far more credible than [mother]. I find her virtually, totally, not credible. Some of the things she said boggled my mind, and make no sense whatsoever."

[4] Her affidavit was filed in support of her motion to set aside the Southard dissolution judgment at issue here.

In 2012, Southard filed a petition for dissolution of the marriage, seeking custody of all three children.[5] Larkins petitioned to intervene, asking to be named AR's legal father. The dissolution court ruled that AR's paternity should be decided in a separate proceeding.

In 2013, the court entered a judgment of dissolution of the marriage. At the conclusion of trial, the court stated that, "[b]ased on the evidence, this is * * * a marriage I am dissolving." The court determined, on the record then before it, that Southard was effectively AR's legal father, although he was not AR's biological father. The court awarded custody of the three children to Southard and parenting time to mother.

Several months later, mother filed a motion to set aside the dissolution judgment under ORCP 71. She argued that she was still married to Larkins at the time of her second marriage to Southard, that the Southard remarriage was void, and that the court lacked authority to dissolve the marriage or to determine custody of the children. Because she now deemed her marriage to Southard void, mother argued that the dissolution judgment was void. The court denied the motion.[6]

On appeal, mother argues, among others, two related assignments of error. In her fifth assignment, mother argues that the court erred in "finding the marriage of [the parties] was 'valid'" and then proceeding to grant the parties a dissolution judgment with a custody determination. In her sixth assignment, she argues that, for the same reason, the court erred in denying her motion for relief from judgment. That is, because the second Southard marriage was allegedly void, the court lacked authority to have acted.

---

[5] At about the same time, Southard prompted a bigamy prosecution of mother. Mother pled guilty to bigamy in July 2013.

[6] In 2014, after this dissolution judgment, the paternity court concluded that Larkins was AR's biological father. The paternity court did not disturb the dissolution court's intervening rulings on custody. Still later, mother filed a motion to modify custody of the three children. Simultaneously, Southard filed a motion to establish custody with him as a person with a parent-child relationship as permitted by ORS 109.119. The court then allowed Larkins to intervene in renewed proceedings. Ultimately, the court continued custody of AR with Southard and denied mother's motion for change of custody as to the three children. Those decisions are the subject of another appeal.

She asks that the dissolution judgment be set aside. We first address mother's contention that the Southard marriage was invalid and, second, mother's contention that the court lacked authority, resulting in a void judgment.

To the extent that mother assails the validity of the second Southard marriage, her argument comes too late, because she did not preserve the issue or develop the record. Mother complains that the trial court "never addressed *** [the issue of] the validity of the marriage." That is so because mother did not ask the court to make such a ruling. Although mother had pleaded in response to the petition for dissolution that the marriage between mother and Southard was void because her second marriage to Larkins had not been dissolved, her response to the petition did not seek a declaratory ruling nor an annulment of a void marriage. Instead, her response concluded with a prayer that asked the court to *dissolve* the Southard marriage and award her custody of the children.

At trial, mother did not present the kind of case needed to challenge the validity of a prior marriage. In *Davis v. Davis*, 55 Or App 982, 986, 640 P2d 692, *adh'd to on recons*, 57 Or App 145, 643 P2d 1351 (1982), we held that:

> "'It is incumbent upon a party who asserts the invalidity of such a marriage, upon the grounds that one of the parties thereto has been formerly married, to allege and prove that the parties to the alleged former marriage were eligible to consummate the same, and that the spouse of such former marriage is still living; *that the first marriage has not been dissolved by divorce* or by death of one of the parties.'"

(Emphasis added.) On reconsideration, we added that, in the absence of an express stipulation that a prior marriage was valid, the court will not extend the effect of any other stipulation "beyond the *facts* expressly stipulated." *Davis v. Davis*, 57 Or App 145, 148, 643 P2d 1351 (1982). (Emphasis in original.)

Mother offered no evidence to support her allegation that the Southard marriage was void. The exhibits in the dissolution trial do not include any record of the remarriage to Larkins. At that time, mother offered no evidence that she and Larkins had effectively remarried or, more importantly,

had *not* divorced. *See id.* (requiring proof that prior marriage has not been dissolved). Southard acknowledged on direct examination that mother was married to another person at the time of her marriage to him, but he explained that acknowledgement was just an "if" about something he had been told, insofar as he himself was not at the wedding ceremony. In closing argument, mother mentioned a pending bigamy prosecution against her, but she did so only in order to argue that Southard was vindictive. In short, mother did not offer any evidence, nor request a declaration that the Southard marriage was invalid. The question was not squarely presented. *See Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) (on preservation of error generally).[7] Accordingly, the court did not err in failing to address the validity of the marriage when rendering its judgment of dissolution of marriage.

Months after trial, at the hearing on the motion to set aside the judgment under ORCP 71, Southard stipulated that mother was married to Larkins at the time of his second marriage to mother, but that stipulation was offered *after* the dissolution judgment, not before. Seeking to set aside the judgment, mother attested that, although she had not believed the Larkins remarriage to have been "official," she now recognized that, because she had not filed for a divorce from him, she considered herself "to be married to him today." Mother did not offer those facts as "newly discovered evidence" that might warrant setting aside the dissolution judgment under ORCP 71 B(1)(b). She did not try to argue that the status of the Larkins remarriage, "with due diligence, could not have been discovered before the trial." *State of Oregon v. Davis*, 192 Or 575, 579, 235 P2d 761 (1951) (listing requirements for "newly discovered evidence"). Rather, mother simply assumed that her supplemental

---

[7] The court has explained:

"Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal. * * * Preservation also ensures fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise."

*Lampert*, 345 Or at 219.

evidence should be taken as fact and used in hindsight to reassess the dissolution judgment. She urged that, because the Southard marriage was void, the dissolution judgment was void.[8] She contended that ORS 107.105(1)(a),[9] which gives the court authority to award custody, should only apply to custody awards when there is a valid marriage. She sought to set aside the dissolution under ORCP 71 B(1)(d) (void judgment) or ORCP 71 C (inherent power of a court to modify a judgment).

Mother cites no authority for the proposition that a dissolution judgment should be deemed void when a disappointed party offers belated evidence, well after judgment, to suggest that the marriage was void. And, we are aware of none. This is not a situation in which a judgment is void, as when a court lacks personal jurisdiction over a party when entering a judgment. *See, e.g., Estate of Selmar A. Hutchins v. Fargo*, 188 Or App 462, 72 P3d 638 (2003) (failure of personal jurisdiction). "Generally speaking, when a trial court has both subject matter jurisdiction and personal jurisdiction, its judgment, even if erroneous, is not void." *PGE v. Ebasco Services, Inc.*, 353 Or 849, 856, 306 P3d 628 (2013).

A court does not lack authority over issues of custody even if the marriage is void. In *Denis and Denis*, 153 Or App 655, 659-60, 958 P2d 199 (1998), the husband argued that the court could not award spousal support, when that marriage was annulled as void from the beginning. On appeal, we concluded that the court had the authority to award spousal support to the wife in circumstances in which the marriage was void. *Id.*

---

[8] ORS 106.020(1) provides that a marriage is "absolutely void" when either spouse "had a wife or husband living at the time of such marriage."

[9] ORS 107.105(1)(a) states, in relevant part:

"Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"(a) For the future care and custody, by one party or jointly, of all minor children of the parties born, adopted or conceived during the marriage and for minor children born to the parties prior to the marriage, as the court may deem just and proper under ORS 107.137. The court may hold a hearing to decide the custody issue prior to any other issues. When appropriate, the court shall recognize the value of close contact with both parents and encourage joint parental custody and joint responsibility for the welfare of the children."

There is no sound reason that the same authority would not also allow the court to determine custody of children in a judgment or annulment of a void marriage. Under ORS 107.105, "[w]henever the court renders a judgment of marital annulment, dissolution or separation," the court may award custody in the judgment. Even if the Southard marriage had been shown to be void by evidence duly presented at the time of trial, the court would have had authority, whether by annulment or dissolution, to appropriately determine custody.

The court certainly did not lack authority, let alone jurisdiction, when the evidence on the validity of the Southard marriage was offered *after* trial. Even when the court might lack authority, a lack of authority is not the same as a lack of jurisdiction. "The fact that a court acts in violation of a statute does not mean that the resulting judgment is void." *Geranghadr v. Entagh*, 189 Or App 567, 572, 77 P3d 323 (2003) (court's judgment was not void because it had jurisdiction to enter judgment on an arbitration award even if mistaken in construing statute). Mother's post-judgment challenge does not draw into question the court's personal or subject matter jurisdiction or any other basis under ORCP 71 B(1)(d) or ORCP 71 C to have set aside the judgment.

The court awarded custody of three children born prior to the marriage. Two of those children are Southard's biological children. Southard had raised AR as his own child, was named on his birth certificate for his entire life, and lived with him on and off over a five-year period. Akin to *Denis,* it was within the court's authority to make a custody award to a party who has sought the benefit of a marriage even if the court had declared the marriage void. 153 Or App at 660. But, here, there was no timely evidence that the marriage was void. And, as in *Geranghadr*, any question about the court's authority did not provide a basis upon which to assert that the dissolution judgment was void.

Finally, we reach the custody issue on its merits. As noted at the outset, we have declined to undertake *de novo* review. Therefore, we review a trial court's custody determination, which involves the best interests of the child, for an abuse of discretion, and we reverse only if a trial court's

discretionary determination is not "a legally permissible one." *Sjomeling v. Lasser*, 251 Or App 172, 187, 285 P3d 1116 (2012). Having reviewed the record, we conclude that the court did not abuse its discretion and that the court's decision was "a legally permissible one."

The trial court did not err in rendering its judgment of dissolution. The court had authority to issue the dissolution judgment and award custody. The court did not abuse its discretion in its determination of custody, and it did not err in rejecting mother's motion for relief from judgment.

Affirmed.