Argued and submitted January 16, affirmed October 7, 2020

In the Matter of H. W.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*
H. W.,
*Respondent,*
*v.*
K. W.,
*Appellant.*

Multnomah County Circuit Court
18JU05221;
Petition Number 113265;
A171945

476 P3d 107

Mother appeals the dependency judgment in which the juvenile court established jurisdiction over her child, H, based on mother's fact admissions. Mother argues that her admissions were insufficient to permit the juvenile court's dependency jurisdiction and that the judgment should be reversed, even though she did not raise that objection at the jurisdictional trial. In her view, preservation is excused by *Dept. of Human Services v. D. D.*, 238 Or App 134, 138, 241 P3d 1177 (2010), *rev den*, 349 Or 602 (2011), which fused the dual meanings of "jurisdiction" in ORS 419B.100(1)—dependency jurisdiction and subject matter jurisdiction—and held that dependency jurisdiction could be, like subject matter jurisdiction, challenged at any time. The Department of Human Services and H assert otherwise and argue that the two meanings of "jurisdiction" were disentangled in *Dept. of Human Services v. C. M. H.*, 301 Or App 487, 455 P3d 576 (2019), *rev allowed*, 366 Or 825 (2020). The parties agree that *C. M. H.* implicitly overruled *D. D. Held*: *D. D.* is plainly wrong and overruled. Because mother failed to preserve a challenge to the juvenile court's dependency jurisdiction determination, the judgment is affirmed.

Affirmed.

Carol A. Herzog, Judge pro tempore.

Shannon Flowers, Deputy Public Defender, argued the cause for appellant. Also on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent Department of Human Services. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Matthew J. Steven argued the cause and filed the brief for respondent H. W.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Affirmed.

**ARMSTRONG, P. J.**

Mother appeals the dependency judgment in which the juvenile court established jurisdiction over her child, H, based on mother's fact admissions. Mother argues that her admissions were insufficient to permit the juvenile court's dependency jurisdiction, even though she did not raise that objection at the jurisdictional trial. In her view, preservation is excused by our decision in *Dept. of Human Services v. D. D.*, 238 Or App 134, 138, 241 P3d 1177 (2010), *rev den*, 349 Or 602 (2011), in which we fused the dual meanings of "jurisdiction" in ORS 419B.100(1)—dependency jurisdiction and subject matter jurisdiction—when we effectively held that dependency jurisdiction could be, like subject matter jurisdiction, challenged at any time. *See Kleikamp v. Board of Commissioners of Yamhill County*, 301 Or App 275, 281, 455 P3d 546 (2019) ("A lack of subject matter jurisdiction can be raised at any time."). Mother contends on appeal that that was the correct way to interpret ORS 419B.100(1)(c).[1] The Department of Human Services (DHS) asserts otherwise and argues that our recent discussion of jurisdiction in *Dept. of Human Services v. C. M. H.*, 301 Or App 487, 455 P3d 576 (2019), *rev allowed*, 366 Or 825 (2020), in which we disentangled the two meanings of "jurisdiction," was the correct approach. DHS now asks us to overrule *D. D.*, which all parties in this appeal assert was implicitly done in *C. M. H.*[2] This appeal concerns the conflict between those two cases. In resolving that conflict, we conclude that *D. D.* was incorrectly decided and that, in light of what we said in *C. M. H.*, it was plainly wrong.[3] Because mother failed to object below, or invited the error, to the juvenile court

---

[1] ORS 419B.100(1)(c) provides, as relevant here, that, "Except as otherwise provided in subsection (5) of this section and ORS 107.726, the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and *** [w]hose condition or circumstances are such as to endanger the welfare of the person or of others[.]"

[2] H also argues that the exception to the preservation rule created by *D. D.* is no longer tenable in light of *C. M. H.* and suggests that we explicitly overrule *D. D.*

[3] This opinion overrules our existing precedent. The panel specifically advised all members of the court of the effect of its decision, but neither the chief judge nor a majority of the regularly elected or appointed judges referred, under ORS 2.570(5), the cause to be considered en banc.

establishing dependency jurisdiction, we affirm the jurisdictional judgment.

Before we turn to our legal discussion, we briefly set out the undisputed historical and procedural facts. In 2018, DHS petitioned the juvenile court to take jurisdiction over H on the grounds that (1) father could not be found and was not a custodial resource, and (2) mother's cognitive abilities made her unable to adequately care for H, who has significant behavioral issues. Later that year, father was discovered in the State of Louisiana, DHS amended the petition to reflect that development, and the juvenile court established dependency jurisdiction as to father based on father's admissions that he needed DHS's help to safely parent H given that he did not have sole custody of H, he was unable to protect H from mother, and H had significant needs. The allegations against mother were set for trial.

At the trial, held in May 2019, DHS recommended that H be placed with father; Louisiana had conducted a home study and determined that there were not any safety issues in father's home. Mother was presented with the choice of the juvenile court dismissing the case without establishing dependency jurisdiction, which meant that H would be placed immediately with father, or the court establishing jurisdiction so that H could remain with mother for the rest of H's school year. Mother chose the latter and admitted that she "understands [H] will be placed out-of-state with the father" and "believes the placement requires oversight by DHS to ensure [H]'s safety." The court entered a judgment in which it established dependency jurisdiction over H as to mother based on mother's admissions. Mother filed a notice of appeal. A few months after the juvenile court took jurisdiction of H, the court conducted a review hearing and entered an order dismissing the dependency case and terminating its wardship. The order recited that H had been in Louisiana for four months and that reports from several professionals in Louisiana indicated that there were no concerns about H's safety or father's parenting.

That dismissal requires us to pause our jurisdictional discussion to address DHS's motion to dismiss mother's appeal of the jurisdictional judgment. DHS asserts that the

juvenile court's dismissal of dependency jurisdiction makes this appeal moot because our decision in the matter will not have any practical effect on the rights of the parties. *See Dept. of Human Services v. A. B.*, 362 Or 412, 414, 412 P3d 1169 (2018) (a party moving to dismiss an appeal as moot must show that the decision being challenged on appeal will have no further practical effect on the parties' rights). In DHS's view, mother's admission in this case is not one that would put her at a disadvantage in any future dependency or custody proceedings because it is not an admission of abuse and is "relatively benign." Mother contests dismissal and responds that there is ongoing custody and parenting time litigation between her and father and that, in her view, reversal of the jurisdictional judgment would improve her position because she would not have a judicial determination that she was unfit.

We agree with mother that the appeal is not moot. The crux of the jurisdictional judgment is that H could remain with mother for a little while longer before H was placed with father, but for that to happen, she had to admit that she requires DHS oversight to ensure H's safety. Further, the juvenile court's determination that it had dependency jurisdiction was necessarily a determination that mother was unable to adequately care for H under ORS 419B.100. That determination could have bearing on a custody and parenting time decision and is therefore sufficient to overcome DHS's burden of showing that a decision on our part will have no practical effect on the parties' rights. *See A. B.*, 362 Or at 426 (once the party moving for dismissal takes the position that an appeal is moot, the appellant parent must identify any continuing practical effects or collateral consequences that the parent believes render the appeal justiciable).

Returning to the main issue, mother asks for a reversal of the juvenile court's determination that it had dependency jurisdiction over H. According to mother, her admission that placement with father with DHS oversight to ensure H's safety was an insufficient ground to establish dependency jurisdiction. She contends that her admission failed to show that she suffered from any deficits that

exposed H to a current, nonspeculative threat of serious loss or injury. As noted, she failed to make that argument below and argues on appeal that her failure to object to the juvenile court's jurisdictional determination is of no consequence because, under *D. D.*, she can raise it for the first time on appeal. DHS responds that, to the extent that *D. D.* so held, it was wrongly decided and argues that *D. D.* was implicitly overturned by *C. M. H.*, in which we disentangled the juvenile court's authority to act, *i.e.*, its subject matter jurisdiction, from its determination to assert dependency jurisdiction over a child.

In *D. D.*, mother admitted to DHS's allegation, namely the allegation that "'child has special medical needs'" for which she "'would benefit from assistance from [DHS].'" 238 Or App at 136 (emphasis omitted). The mother also stipulated that, "by admitting the allegations, the Court may take control over [her child], as deemed necessary \*\*\* and may place the child out of the family home, if deemed it is the best interests of the child." *Id*. at 136-37 (internal quotation marks omitted). The juvenile court established jurisdiction over the child based on the mother's admissions and proceeded to a disposition hearing. *Id*. at 137. At the hearing, the mother neither made any objection to the court establishing dependency jurisdiction nor moved to dismiss. Rather, she argued that the child should be placed with her rather than with the father. The juvenile court determined that it was in the best interests of the child to place the child with the father. *Id*.

On appeal, the mother argued that the admitted allegations were insufficient to support the juvenile court's jurisdiction over the child. *Id*. at 138. Mother posited that "it is axiomatic that a set of facts that would be insufficient to establish jurisdiction, if proved, is necessarily insufficient to establish jurisdiction when admitted." *Id*. (emphasis omitted). As for her failure to object to the juvenile court taking jurisdiction of the child, the mother argued that parties cannot stipulate to the existence of jurisdiction. We agreed with the mother, stating that the mother "is correct that, although a party may stipulate to facts supporting jurisdiction, jurisdiction cannot itself be created by stipulation." *Id*.

We relied on *State ex rel Juv. Dept. v. Gates*, 96 Or App 365, 371, 774 P2d 484, *rev den*, 308 Or 315 (1989), to explain that, where no party had challenged the juvenile court's jurisdictional determination,

> "'we must consider jurisdictional issues, even when they are not raised by the parties. Jurisdiction for a so-called "conditions-and-circumstances" juvenile hearing, [*former* ORS 419.476(1)(c) (1991)],[4] is not just the power of the court to act. It also requires a factual determination that a child is dependent, which is the basis on which the court may make the child a ward of the court, that is, may place the child in the court's "jurisdiction."'"

*D. D.*, 238 Or App at 138. Consequently, we concluded that we were required to consider whether the juvenile court properly determined that it had jurisdiction despite the mother's failure to object to the court asserting jurisdiction. *Id*.

More recently, in *C. M. H.*, the juvenile court disestablished the parentage of the appellant, who was married to the child's biological mother when the child was born. 301 Or App at 489. The appellant asserted that the juvenile court lacked subject matter jurisdiction to disestablish her parentage because, when it did so, it had not yet taken dependency jurisdiction of the child. *Id*. The appellant contended that ORS 419B.100 is the provision that provides subject matter jurisdiction and that subject matter jurisdiction is not established until the juvenile court determines that it has dependency jurisdiction. *Id*. at 494-95. We rejected that argument, holding that, because the child was taken into protective custody, ORS 419B.157 provided subject matter jurisdiction for the juvenile court. *Id*. at 496 (ORS 419B.157 provides that "the jurisdiction of the juvenile court of the county in which a child is taken into protective custody shall attach from the time the child is taken into custody").

Our analysis in *C. M. H.* explored the use of the term "jurisdiction" for juvenile dependency cases. We explained that there are "two uses of the term jurisdiction at issue in dependency cases: (1) the juvenile court's authority to act at all—often referred to as subject matter jurisdiction; and

---

[4] *Former* ORS 419.476 (1991) is a prior version of ORS 419B.100 and other juvenile statutes. *See* 307 Or App at 28-30.

(2) the juvenile court's determination to assert jurisdiction over a child—sometimes referred to as a court asserting dependency jurisdiction." 301 Or App at 495. The former use of the term "jurisdiction"—subject matter jurisdiction—we said, is the authority to exercise judicial power; that authority is conferred by a statute or the state constitution. *Id.* (citing *State v. Terry*, 333 Or 163, 186, 37 P3d 157 (2001), *cert den*, 536 US 910 (2002)). We noted that orders entered by a court lacking subject matter jurisdiction may be attacked at any time, while orders entered by a court with subject matter jurisdiction require a preserved claim of error. *Id.* (citing *Multnomah County Sheriff's Office v. Edwards*, 361 Or 761, 777-78, 399 P3d 969 (2017)). The latter use of the term "jurisdiction" in the context of dependency cases occurs when a juvenile court establishes that a child is within its dependency jurisdiction and makes the child a ward of the court. "'When the court takes jurisdiction of a child, a series of complex statutes and proceedings come into play. Those statutes seek to protect the safety and well-being of children, and the rights of both children and parents.'" *C. M. H.*, 301 Or App at 495-96 (quoting *Dept. of Human Services v. S. J. M.*, 364 Or 37, 50, 430 P3d 1021 (2018)). The use of "jurisdiction" in that sense, we said, "is a legal question based on factual findings." We then said that the "two uses of the term 'jurisdiction' contemplate distinct legal concepts, *and a juvenile court taking jurisdiction of a child is not a prerequisite for that court's authority to act at all,* viz*., for the court to exercise its subject matter jurisdiction.*" *Id.* (emphasis added).

That last statement, in which we disentangled the two uses of the term "jurisdiction," contradicts what we said in *D. D.* In *D. D.*, we fused together two meanings of "jurisdiction"—subject matter jurisdiction and dependency jurisdiction—when we effectively concluded that a challenge to *dependency* jurisdiction could be raised at any time. Mother reads *D. D.* to mean that a juvenile court's determination that a child's condition or circumstances endangers a child is a prerequisite for the court's subject matter jurisdiction. That is because, in mother's view, the legislature conditionally tied the terms "exclusive original jurisdiction," of which she asserts the ordinary meaning is subject matter jurisdiction, to the subject areas set out in ORS

419B.100(1)(c): "[T]he juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age *and* \*\*\* [w]hose condition or circumstances are such as to endanger the welfare of the person or of others[.]" (Emphasis added.) That is, mother understands ORS 419B.100(1)(c) to mean that it is the juvenile court's endangerment determination, not the initiation of dependency proceedings, that gives rise to the juvenile court's subject matter jurisdiction.

Before we discuss mother's statutory interpretation arguments, it is instructive to revisit subject matter jurisdiction. The Oregon Constitution gives circuit courts "subject matter jurisdiction over all actions unless a statute or rule of law divests them of jurisdiction." *Terry*, 333 Or at 186; *see* Or Const, Art VII (Original), § 9 ("All judicial power, authority, and jurisdiction not vested by this Constitution, or by laws consistent therewith, exclusively in some other Court shall belong to the Circuit Courts[.]"); Or Const, Art VII (Amended), § 2 ("The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as present constituted until otherwise provided by law."). "As a general rule, in order to divest the circuit courts of jurisdiction, the legislature must do so expressly." *Speciality Risk Services v. Royal Indemnity Co.*, 213 Or App 620, 625, 164 P3d 300 (2007).

Thus, for example, the legislature has divested circuit courts of workers' compensation matters concerning a claim under ORS 656.001 to 656.794. *SAIF v. Harris*, 66 Or App 165, 167-68, 672 P2d 1384 (1983), *rev den*, 298 Or 334 (1984) ("The jurisdiction of the Hearings Division and the Board are established by the Workers' Compensation Act. In ORS 656.704(3), the authority of the Director and the Board is expressly provided for 'matters concerning a claim under ORS 656.001 to 656.794.'"); *SAIF v. Johnson*, 99 Or App 64, 67, 781 P2d 374 (1989), *rev den*, 309 Or 334 (1990) ("We have repeatedly held that the circuit courts lack jurisdiction to consider matters concerning workers' compensation claims and that the decisional and review provisions of the Workers' Compensation Law are exclusive."); *see also* ORS 197.825(1) (with some exceptions, providing subject matter jurisdiction

to the Land Use Board of Appeals (LUBA) to review land use decisions of local governments and state agencies). Another example is that, generally, a circuit court's jurisdiction over a "cause" is divested and transferred to this court when a party files a notice of appeal. *See* ORS 19.270(1) ("The Supreme Court or the Court of Appeals has jurisdiction of the cause when the notice of appeal has been served and filed * * *."); ORS 19.270(1) gives an appellate court "jurisdiction of the cause when the notice of appeal has been served and filed".[5]

Importantly, subject matter jurisdiction is a court's *authority* to judicially engage with a subject area or type of dispute. *C. M. H.*, 301 Or App at 495; *Garner v. Alexander*, 167 Or 670, 675, 120 P2d 238 (1941), *cert den*, 316 US 690 (1942) (Subject matter jurisdiction is "the power to deal with the general subject involved."). In *Terry*, the Supreme Court described subject matter jurisdiction as defining "the *scope* of proceedings that may be heard by a particular court of law and is conferred by statute or the constitution." 333 Or at 186 (emphasis added). Moreover, "subject matter jurisdiction—the authority to exercise judicial power in a given subject area or dispute—is distinct from a court's exercise of its authority within a given subject area or dispute." *Menten v. Deatherage*, 302 Or App 425, 429, 461 P3d 1075 (2020) (citing *Southard v. Larkins*, 275 Or App 89, 97, 364 P3d 1006 (2015), *rev den*, 359 Or 39 (2016)).

From the foregoing, we derive two salient principles. First, a court cannot exercise its judicial power without first having the authority to do so. *See also Ruhrgas AG v. Marathon Oil Co.*, 526 US 574, 584, 119 S Ct 1563, 143 L Ed 2d 760 (1999) (subject-matter jurisdiction necessarily precedes a ruling on the merits (citing *Steel Co. v. Citizens for Better Environment*, 523 US 83, 118 S Ct 1003, 140 L Ed

---

[5] Federal law may divest a state court of subject matter jurisdiction. *See, e.g.*, *State v. Hill*, 277 Or App 751, 760, 373 P3d 162, *rev den*, 360 Or 568 (2016) ("Under federal law, Oregon courts are divested of subject matter jurisdiction over certain criminal offenses that occur in Indian country, including offenses committed by Indians."). In that circumstance, federal law makes explicit that it is tribal courts that have subject matter jurisdiction over charged criminal offenses. *Id.* at 760 (citing 25 USC § 1301(2) ("Tribal courts have criminal jurisdiction over all offenses committed by Indians in each tribe's respective Indian country lands.")).

2d 210 (1998)). Second, when the legislature has divested a court of subject matter jurisdiction or conferred subject matter jurisdiction, the legislature leaves no doubt that there is somewhere for litigants to go to have their dispute resolved. For example, ORS 197.825(1), with some exceptions, provides exclusive jurisdiction to LUBA to review land use decisions of local governments and state agencies. Without that divestment and corresponding direction by the legislature of where a litigant must go to resolve a dispute, a litigant may not know to *which* court or forum the litigant can go, or worse, a litigant is left without a forum with the authority to resolve the dispute at all.

With that said, we turn to ORS 419B.100(1), which provides, in relevant part:

> "Except as otherwise provided in subsection (5) of this section and ORS 107.726, the juvenile *court has exclusive original jurisdiction* in any case involving a person who is under 18 years of age *and*:

> "* * * * *

> "(c)   Whose condition or circumstances are such as to endanger the welfare of the person or of others[.]"

(Emphases added.) Mother contends that *D. D.* was correctly decided because (1) the phrase "exclusive original jurisdiction" means that the legislature conferred subject matter jurisdiction over juvenile dependency cases to juvenile courts and (2) that a juvenile court has that "exclusive original" subject matter jurisdiction when one of the conditions set out in ORS 419B.100(1) is satisfied. In mother's view, ORS 419B.100(1) does not say that one of the conditions set out in it is *alleged* to occur. Rather, she argues, the conditions must be determined by a juvenile court to exist before it has subject matter jurisdiction.

Although we disagree with mother's ultimate point—that a juvenile court has subject matter jurisdiction only upon a determination of dependency jurisdiction—we agree with her that "exclusive" and "original" when modifying "jurisdiction" ordinarily means "subject matter jurisdiction." "Exclusive jurisdiction" means a "court's power to adjudicate an action or class of actions to the exclusion of all

other courts." *Black's Law Dictionary* 981 (10th ed 2014); *see Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014) (explaining that, "when a term is a legal one, we look to its established legal meaning as revealed by, for starters at least, legal dictionaries" (internal quotation marks omitted)). "Original jurisdiction" means a "court's power to hear and decide a matter before any other court can review the matter." *Black's* at 982. It would be difficult to conclude that when jurisdiction is modified by the terms "exclusive" and "original," it does not mean, at least in some respect, subject matter jurisdiction.

Mother also asserts that the former version of ORS 419B.100(1), *former* ORS 419.476 (1991), *repealed by* Or Laws 1993, ch 33, § 373, and related case law, namely, *State v. Scurlock*, 286 Or 277, 593 P2d 1159 (1979), and *Delaney v. State of Oregon*, 58 Or App 442, 648 P2d 1302 (1982), support her understanding of "exclusive original jurisdiction" for juvenile dependency proceedings. In 1993, the legislature reorganized the juvenile code into three chapters, ORS chapter 419A for general provisions and definitions, ORS chapter 419B for juvenile dependency, and ORS chapter 419C for juvenile delinquency. Or Laws 1993, ch 33. Prior to that reorganization, *former* ORS 419.476 (1991) provided, in part:

> "The juvenile court has *exclusive original jurisdiction* in any case involving a person who is under 18 years of age *and*:

> "(a)  Who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city; or

> "* * * * *

> "(c)  Whose behavior, condition or circumstances are such as to endanger the welfare of the person or the welfare of others[.]"

(Emphases added.)

In *Scurlock*, the Oregon Supreme Court decided an issue of subject matter jurisdiction for a juvenile court under *former* ORS 419.476 (1991) for matters of juvenile

delinquency. 286 Or at 279. The court noted that *former* ORS 419.476 (1991) "defines generally the jurisdiction of the juvenile court" and that *former* ORS 419.573(1) (1991) provided that "the jurisdiction of the juvenile court attaches at the time the child is taken into custody." *Id*. at 279. The *Scurlock* defendant seriously injured someone while driving a car three months after turning 17 years old. The district attorney intentionally waited until the defendant turned 18 to indict him for first-degree assault, and he was tried as an adult. *Id*. The Supreme Court held that that was impermissible. *Id*. at 282. The juvenile court was the correct forum to decide whether retaining jurisdiction would not serve the defendant's best interests because he was not amenable to delinquency rehabilitation. *Id*. at 281. Notable, however, is that the juvenile court's subject matter jurisdiction—the authority to adjudicate a youth's alleged criminal act and remand or adjudicate the act the defendant committed and determine whether the adult criminal system was better suited for a youth—was *not* predicated on a determination that the defendant had committed an act that would be a violation if committed by an adult. The juvenile court had subject matter jurisdiction before those determinations were made. *Id*. at 281-82.

In *Delaney*, the defendant was indicted for theft when he was 17 years old. 58 Or App at 444. Without a juvenile court proceeding and a determination of whether he should be remanded to the adult system on the theft charge, the defendant left the state. Later, defendant pleaded guilty to the theft charge, but as an adult: both the district attorney and the defendant's attorney believed that, because the defendant was within a few days of turning 18 years old, proceeding in the juvenile court was unnecessary. The defendant was convicted of theft, but in seeking post-conviction relief, he contended that the circuit court did not have jurisdiction to convict him without a remand from the juvenile court. He argued that *former* ORS 419.476 (1991) provided that the juvenile court was the proper court to consider the alleged conduct. *Id*. We noted that *Scurlock* held that "exclusive jurisdiction in that case lay in the juvenile court, because the defendant would have been taken into custody before reaching age 18 if the district attorney had acted in

accordance with" the policy that jurisdiction attaches from the time a child is taken into custody and it is for the juvenile court to decide whether to remand a minor to adult criminal proceedings in the circuit court. *Id.* at 445 (emphasis omitted). Further, we said that it "is not important in this case whether the event triggering juvenile court jurisdiction is the initiation of judicial proceedings or the taking of the child into custody; both of those events occurred while this defendant was 17 years old. The juvenile court had exclusive original jurisdiction of the matter." *Id.* at 445-46.

We see that in those two cases, *former* ORS 419.476 (1991) used the term "exclusive original jurisdiction" for any case involving a person under the age of 18 who committed an act that would be criminal if done by an adult. In both decisions, the issue was subject matter jurisdiction. So, yes, mother is correct that, when the understanding of "exclusive original jurisdiction" concerning *former* ORS 419.476 (1991) is applied to ORS 419B.100, those terms refer to subject matter jurisdiction. However, in both *Delaney* and *Scurlock*, it was not the case that a *determination* that the defendant committed an act that would be a crime if committed by an adult provided subject matter jurisdiction. *Former* ORS 419.476 (1991) had the same conjunctive construction as ORS 419B.100(1) and, if *former* ORS 419.476 (1991) was interpreted in the way mother urges us to interpret ORS 419B.100(1), the juvenile court would not have had subject matter jurisdiction until it had first determined that the youths had committed the alleged acts. But that was not the case. Jurisdiction attached before any such determination was made. Accordingly, we can understand the subject areas of ORS 419B.100(1) as just that, subject areas, and not conditions that are satisfied upon a determination by the juvenile court.

As intimated in our discussion of subject matter jurisdiction above, a critical defect in mother's argument and our reasoning in *D. D.* is that a determination by a juvenile court, at least for whether "behavior, condition or circumstances are such as to endanger the welfare of the person or of others," ORS 419B.100(1)(c), is a *merits* decision in which the juvenile court determines *dependency jurisdiction*. *See*

*C. M. H.*, 301 Or App at 495 (explaining that "the juvenile court's determination to assert jurisdiction over a child [is] sometimes referred to as a court asserting dependency jurisdiction"). Put differently, a decision under ORS 419B.100 is an adjudication of the merits of the alleged conditions and circumstances. *See* ORS 419B.127(2)(b) (a court can transfer a proceeding to the county where a ward resides if the ward "has been adjudicated to be within the jurisdiction of the court under ORS 419B.100(1)(b) or (c)"); *State v. M. A. S.*, 302 Or App 687, 699, 462 P3d 284 (2020) (explaining that the ordinary meaning of "adjudicate" is "'to come to a judicial decision'" (quoting *Webster's Third New Int'l Dictionary* 27 (unabridged ed 2002)). But, as mother would have it, and as we appear to have said in *D. D.*, adjudicating dependency jurisdiction is necessary for a court to establish its subject matter jurisdiction. How can that be? A merits decision necessarily requires subject matter jurisdiction. A court cannot exercise its authority to do something without first having that authority.

In a similar vein, the implication of mother's argument—that subject matter jurisdiction occurs when a juvenile court has made a dependency jurisdiction determination—is that there is no forum available to litigants to resolve a dependency jurisdiction dispute. Mother asserts that, with ORS 419B.100(1), the legislature intended to divest jurisdiction from the circuit courts. Yet, if that is the case, what court has jurisdiction over the dependency subject area until it is decided that, for a juvenile, one of the conditions of ORS 419B.100(1) is met? Mother points to none. Thus, mother's construction of ORS 419B.100(1) contemplates a scenario that is quite different from the other instances in which the legislature has allocated which forum should adjudicate a subject matter. For example, ORS 19.270 is explicit that, when a notice of appeal has been served and filed, an Oregon appellate court has jurisdiction of the matter (with some exceptions). In this case, if the juvenile court lacks subject matter jurisdiction until it decides it has dependency jurisdiction, it is a mystery to which forum jurisdiction is given to decide the merits of a dependency petition. Consequently, it is untenable to interpret ORS 419B.100(1) to mean that a juvenile court does not

have subject matter jurisdiction until it determines that it has dependency jurisdiction.

ORS 419B.100(1), however, is only one of several provisions in the juvenile code that inform our understanding of a juvenile court's subject matter jurisdiction. Notably, the legislature has expressly directed that authority over dependency and other juvenile matters be exercised by the *circuit court*. ORS 3.260 provides that the "circuit courts and the judges thereof shall exercise all juvenile court jurisdiction, authority, powers, functions and duties." *See also* ORS 3.270 ("All judicial jurisdiction, authority, powers and duties of the county courts and the judges thereof over matters described in ORS 3.260 (1), are transferred to the circuit courts and the judges thereof."). Further, ORS 419B.090(1) provides that the "juvenile court is a court of record and exercises jurisdiction as a court of general and equitable jurisdiction and not as a court of limited or inferior jurisdiction." When read together, those statutes undermine mother's argument that juvenile courts are separate courts for which the legislature has divested jurisdiction from the circuit courts.[6]

Consequently, it is true that, as we stated in *Dept. of Human Services v. S. P.*, 249 Or App 76, 84, 275 P3d 979 (2012), ORS 419B.100 "governs the juvenile court's subject matter jurisdiction in dependency cases." *See also DHS v. C. F.*, 258 Or App 50, 54, 308 P3d 344, *rev den*, 354 Or 386 (2013) (also stating that "ORS 419B.100 governs the juvenile court's subject matter jurisdiction in dependency cases"). With respect to dependency matters in which it is alleged that the condition and circumstances are such as to endanger a person, ORS 419B.100(1)(c) provides that a juvenile court has authority to exercise its authority in that subject area for persons who are under the age of 18. However, contrary to mother's assertion that subject matter jurisdiction attaches with a dependency jurisdiction determination, it begins with the commencement of dependency proceedings.

---

[6] For some juvenile matters, there are distinctions to be made between the "juvenile court" and the circuit court. For example, in case of juvenile delinquency, in some circumstances, the juvenile court "may waive the youth to the appropriate court handling criminal actions, or to municipal court." ORS 419C.340. Nevertheless, although we may make distinctions between juvenile courts and adult criminal courts, a juvenile court is a circuit court, and it is constitutionally and statutorily vested with subject matter jurisdiction over juvenile matters.

*See C. M. H.*, 301 Or App at 497 (stating that, once "DHS filed a dependency petition, the juvenile court had statutory authority to adjudicate the dependency petition under ORS 419B.100"). Under ORS 419B.305, the juvenile court must hold a hearing on a petition alleging that a child is within the jurisdiction of the court under ORS 419B.100 within 60 days after the petition has been filed. To hold a hearing to make a merits determination whether a child is within the court's dependency jurisdiction, the juvenile court necessarily requires subject matter jurisdiction. For example, the juvenile court requires the authority to exert, under ORS 419B.803, *personal* jurisdiction over certain persons for the dependency proceeding. ORS 419B.803(1) (a "juvenile court *having subject matter jurisdiction* has jurisdiction over," among other persons, the child and their parents and guardians (emphasis added)). Importantly, subject matter jurisdiction is needed to adjudicate whether, by a preponderance of evidence, facts alleged in the petition show the child to be within the jurisdiction of the court. ORS 419B.310(3) (so stating).

But, once that adjudication has been made, and the juvenile court has determined that the allegations of the dependency petition have been proven, the child is then within the jurisdiction of the court and the court has established dependency jurisdiction. *See C. M. H.*, 301 Or App at 496 (taking jurisdiction of a child is "a legal question based on factual findings"). That determination requires that the child be made a ward of the court. ORS 419B.328(1) provides that the "court shall make a child found to be within the jurisdiction of the court as provided in ORS 419B.100 a ward of the court." However, even though that determination is based on proven allegations supporting grounds for dependency jurisdiction under ORS 419B.100(1)(c), that does not mean, as mother argues, that an adjudication under ORS 419B.100(1)(c) is a subject matter adjudication. *See Chandler v. State*, 230 Or 452, 455, 370 P2d 626 (1962) ("It must be remembered that the word 'jurisdiction' as applied to this proceeding is not the kind of jurisdiction that gives the court the power to act at all. In the sense the word is used in [*former* ORS 419.476 (1991)], which specifies the causes which permit the court to make the child a ward of

the court, a finding of jurisdiction is a factual determination that the child is dependent or delinquent. It is not the kind of jurisdictional question that can be raised at any stage of the proceedings.").

Accordingly, ORS 419B.100 contemplates jurisdiction as both subject matter jurisdiction and dependency jurisdiction. To the extent that the terms "exclusive original jurisdiction" speak to the scope of the juvenile court's subject matter jurisdiction, we can understand those terms to add to the larger mosaic of provisions that informs our understanding of a juvenile court's subject matter jurisdiction. But, it is incorrect to conclude that that meaning in ORS 419B.100 subsumes entirely the juvenile court's task of establishing dependency jurisdiction if the facts warrant that determination. Consequently, we were incorrect in *D. D.* when we concluded that a challenge to dependency jurisdiction could be raised at any time because the juvenile court's dependency jurisdiction was a determination of subject matter jurisdiction. Further, we were correct to conclude in *C. M. H.* that subject matter jurisdiction is distinct from the juvenile court's exercise of its authority to establish dependency jurisdiction.

With that said, with the parties agreeing that we implicitly overturned *D. D.* with *C. M. H.*, and with the parties urging us to resolve the conflict between the two cases, we must decide whether to overrule *D. D.* Under *State v. Civil*, 283 Or App 395, 416, 388 P3d 1185 (2017), "we must not, and do not, 'lightly overrule' our precedents, including those construing statutes." Rather, only when a prior decision is "plainly wrong" will we overrule a prior decision. That is, it is insufficient for a prior decision to be merely wrong; it must be "plainly wrong." That standard is "rigorous" and "satisfied only in exceptional circumstances." *Id.* at 417. Having concluded that *D. D.* was wrong, we proceed to discuss whether the erroneous conclusion in *D. D.* meets the rigorous standard of "plainly wrong."

One of those exceptional circumstances that satisfies the plainly-wrong standard is when subsequent case law undermines the analysis in a prior decision to the extent that the prior decision and a latter decision (or decisions) are

irreconcilable. *See State v. Pryor*, 294 Or App 125, 130-31, 430 P3d 197 (2018) (concluding that the analysis in a subsequent case did not undermine the analysis in a prior decision so as to require that we overrule the prior case as "plainly wrong"); *Dixon v. Oregon State Bd. of Nursing*, 291 Or App 207, 213-14, 419 P3d 774, *rev den*, 364 Or 207 (2018) (concluding that a prior decision could not be reconciled with subsequent case law and that overruling that prior decision was the "only way to achieve consistency in our application" of a statute). That is, the prudential doctrine of *stare decisis* that embodies the law's important values of stability and predictability so that litigants and lower courts can act in reliance on case law, *Farmers Ins. Co. v. Mowry*, 350 Or 686, 697-98, 261 P3d 1 (2011), is compromised when we have inconsistent decisions. *See Multnomah County v. Mehrwein*, 366 Or 295, 314, 462 P3d 706 (2020) (discussing cases that cannot be fairly reconciled with other decisions as category of cases where reconsideration of prior cases is warranted).

Resolving inconsistent decisions therefore informs our "plainly wrong" determination. *D. D.* was wrongly decided, and our analysis in *C. M. H.* that disentangles dependency jurisdiction from subject matter jurisdiction favors a conclusion that *D. D.* is plainly wrong. Further, the parties agree that *C. M. H.* and *D. D.* are irreconcilable, with mother even stating that *C. M. H.* "does great violence" to *D. D.* and DHS asserting that *D. D.* "has been called into serious question" by *C. M. H.* Because the two cases cannot be reconciled, we therefore overrule that part of *D. D.* in which we effectively concluded that, under ORS 419B.100, dependency jurisdiction and subject matter are functionally equivalent and that dependency jurisdiction can be challenged regardless whether it was raised by the parties below.

Consequently, in this case, we affirm the dependency judgment. Mother failed to preserve a challenge to the juvenile court's dependency jurisdiction determination. Indeed, mother, so that H would remain with her for the rest of H's school year, invited the juvenile court to take jurisdiction based on her admission that her limited cognitive abilities made her unable to safely parent H. If a party was actively

instrumental in bringing about an asserted error, the party "cannot be heard to complain" on appeal. *State v. Ferguson*, 201 Or App 261, 269-70, 119 P3d 794 (2005), *rev den*, 340 Or 34 (2006) (citing *Anderson v. Oregon Railroad Co.*, 45 Or 211, 216-17, 77 P 119 (1904)). Here, mother invited the juvenile court to take dependency jurisdiction but now asserts that doing so was error. Further, mother does not request that we review the error as plain, and this is not an extraordinary circumstance in which we would so. ORAP 5.45. For those reasons, we affirm the dependency judgment.

Affirmed.