Argued and submitted January 7, decision of Court of Appeals and judgment of circuit court affirmed May 6, 2021

In the Matter of S. R. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Respondent on Review,*

*v.*

C. M. H.,
*Petitioner on Review.*

(CC 18JU06113) (CA A169383) (SC S067827)

486 P3d 772

The Department of Human Services filed a petition in juvenile court alleging that the child's condition and circumstances placed her within one of the categories over which ORS 419B.100(1) grants the juvenile court "exclusive original jurisdiction" and asking the juvenile court to take authorized action to address those allegations. While the petition was pending, the juvenile court granted the department's motion under ORS 419B.395(1) to determine that petitioner is not a legal parent of the child and entered a judgment of nonparentage. Petitioner challenged the judgment on appeal, arguing that the juvenile court lacked subject matter jurisdiction to resolve the parentage dispute because the court did not determine that the child actually fell within one of the categories specified in ORS 419B.100(1). The Court of Appeals affirmed the judgment. *Held*: (1) ORS 419B.100(1), which provides that "the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and" who falls in a category specified in that statute, refers to the juvenile court's subject matter jurisdiction; (2) the juvenile court's subject matter jurisdiction under ORS 419B.100(1) is not limited to cases in which the court has determined the merits of allegations that a child falls within one of the categories specified in that statute; and (3) the department's pending petition in this case was sufficient to give the juvenile court subject matter jurisdiction over the case at the time the court entered the challenged judgment.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

On review from the Court of Appeals.*

Sarah Peterson, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Shannon Storey, Chief Defender.

_____

* Appeal from Benton County Circuit Court. Locke A. Williams, Judge. 301 Or App 487, 455 P3d 576 (2019).

Inge D. Wells, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Walters, Chief Justice, and Nakamoto, Flynn, Duncan, Nelson, and Garrett, Justices, and Kistler, Senior Judge, Justice pro tempore.**

FLYNN, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

** Balmer, J., did not participate in the consideration or decision of this case.

**FLYNN, J.**

This case requires us to determine the nature and scope of the "exclusive original jurisdiction" that ORS 419B.100(1) confers on the juvenile courts over specified categories of "case[s] involving a person who is under 18 years of age." The question arises out of petitioner's challenge to a juvenile court judgment that deprived her of legal-parent status as to S, a child over whom petitioner had claimed a right to custody. According to petitioner, the court's judgment of "nonparentage" is void for lack of subject matter jurisdiction because the juvenile court did not determine that S actually fell within one of the categories specified in ORS 419B.100(1). The Court of Appeals rejected petitioner's challenge to the judgment, *Dept. of Human Services v. C. M. H.*, 301 Or App 487, 455 P3d 576 (2019), and we affirm.

Although we agree with petitioner's premise that the phrase "exclusive original jurisdiction" refers to the juvenile court's subject matter jurisdiction, we reject petitioner's contention that the juvenile court lacks subject matter jurisdiction under ORS 419B.100(1) unless and until it determines that a child actually falls within one of the specified categories.[1] Here, it is undisputed that this case involved a child who was the subject of a petition alleging that she fell within one of those categories and requesting that the juvenile court exercise its authority to address those allegations. And it is undisputed that proceedings to address the petition were pending when the juvenile court ruled on petitioner's parentage status. We conclude that the allegations and relief sought in the pending petition were sufficient to bring the case within the subject matter jurisdiction of the juvenile court. Accordingly, we reject petitioner's contention that the juvenile court lacked subject matter jurisdiction when it ruled on petitioner's parentage status, and we express no opinion regarding whether the court otherwise erred in

---

[1] Although ORS 419B.100(1) does not use the term "child," the juvenile code elsewhere uses the term generically to describe a person who is under 18 and the subject of a proceeding under ORS 419B.100(1). *See, e.g.*, ORS 419B.195(1) (describing when court must "appoint counsel to represent the child or ward in a case filed pursuant to ORS 419B.100"). This opinion uses the term "child" in that generic sense as well.

rejecting petitioner's claim of parentage under the circumstances of this case.

## I. FACTS

The child at the heart of this case, S, was born when petitioner was married to S's biological mother. Although petitioner and biological mother were not living together at the time of S's birth and divorced shortly thereafter, the marriage gave rise to a rebuttable presumption that petitioner is a legal parent of S, ORS 109.070,[2] and petitioner had claimed a right to custody of S. Before this case reached the juvenile court, petitioner had unsuccessfully filed a motion in Benton County Circuit Court to enforce a purportedly valid California judgment awarding petitioner custody of S. In opposition to that motion, biological mother had contended that the California judgment was not valid and also had sought to rebut the presumption of petitioner's parentage with DNA evidence that her current fiancé was 99.99% likely to be S's biological father. The circuit court had ruled that petitioner was not relying on a valid judgment from California and had dismissed her custody motion on that basis, but without prejudice.

Shortly after the dismissal of petitioner's custody motion, the Department of Human Services filed the petition in the present case in the Benton County juvenile court, alleging that "[t]he condition and circumstances of [S] are such as to endanger [her] welfare"—one of the categories specified in ORS 419B.100(1). The circumstances alleged in that petition included unsafe conduct by both biological mother and the man whom she claimed was S's biological father, as well as a "domestically violent relationship" between petitioner and biological mother. The department's petition asked the court "to have an investigation made of the circumstances concerning [S] and to make such order or orders as are appropriate in the circumstances."

---

[2] As pertinent to the facts of child's birth, ORS 109.070(1)(a) provides that "[t]he parentage of a person is rebuttably presumed if," among other circumstances, "[t]he person is married to the birth mother at the time of the child's birth, without a judgment of separation[.]" There is no dispute that the presumption was available to petitioner, who is also a woman and, as a result, never claimed that she could be S's other biological parent.

While that petition was pending before the juvenile court, the department moved for a "judgment of nonparentage" as to petitioner. In support of that motion, the department cited ORS 419B.395(1), which authorizes the juvenile court to enter a judgment of "parentage" or "nonparentage" in a "proceeding under ORS 419B.100" if the court determines that "parentage is disputed as allowed in ORS 109.070" (the presumptive parentage statute). The department supported the motion with the evidence and assertions that biological mother had submitted in opposition to petitioner's earlier custody motion.

Before the juvenile court, petitioner's only opposition to the nonparentage motion was an estoppel argument, in which she alleged that S's biological mother had at times urged petitioner to remain a part of S's life and that it was not in S's best interest to allow anyone to question petitioner's presumption of parentage. The court rejected that argument, ruled that the DNA evidence rebutted the statutory presumption that petitioner was a parent, and entered a judgment concluding that petitioner was not a legal parent of S. Shortly after the court issued its judgment of nonparentage as to petitioner, the department filed a motion to dismiss its pending petition without prejudice, based on a change of circumstances in the home of biological mother and biological father.[3] The juvenile court granted the department's motion to dismiss the petition without prejudice, and petitioner then appealed the judgment of nonparentage.[4]

Petitioner raised essentially the same argument in the Court of Appeals that she raises in this court—that

---

[3] The department filed its motion to dismiss approximately four months after it had filed the petition and represented that "current circumstances of the parents' home [have] changed" since S's removal, including that biological mother has participated in substance abuse treatment, such that "parents' home is currently minimally adequate."

[4] In the Court of Appeals, the department contended that the judgment was not the kind of juvenile court judgment that is appealable. *C. M. H.*, 301 Or App at 491. But the court rejected that argument, concluding that the judgment was appealable under ORS 419A.200(1), which affords a right to appeal to "'any person or entity *** whose rights or duties are adversely affected by a judgment of the juvenile court.'" *C. M. H.*, 301 Or App at 491 (quoting ORS 419A.200(1)). The department has not challenged that conclusion in this court, and we assume for purposes of review that the Court of Appeals correctly analyzed the question of appealability.

the juvenile court lacked subject matter jurisdiction when it ruled on petitioner's parentage status because the court had not yet adjudicated the merits of the pending petition alleging that S fell within one of the categories over which the juvenile court has "exclusive original jurisdiction." ORS 419B.100(1). The Court of Appeals rejected petitioner's challenge to the judgment, although it did so without expressly analyzing whether the department's pending petition was sufficient to give the juvenile court subject matter jurisdiction under ORS 419B.100(1). *C. M. H.*, 301 Or App at 496. Instead, the court identified a different statute as the primary source of the juvenile court's subject matter jurisdiction in this case and also concluded that the juvenile court, having subject matter jurisdiction, "had the authority to decide an issue of parentage under ORS 419B.395(1)."[5] *Id.*

## II. DISCUSSION

We allowed review to address a recurring question regarding the nature of the juvenile court's "exclusive original jurisdiction" under ORS 419B.100(1). Petitioner's challenge to the judgment of nonparentage in this case rests on two premises: first, that the phrase "exclusive original jurisdiction" in ORS 419B.100(1) refers to the juvenile court's subject matter jurisdiction; and second, that ORS 419B.100(1) limits that subject matter jurisdiction to cases in which the court has determined that a person under the age of 18 actually falls within one of the categories set out in the statute. Because the juvenile court in this case did not determine that S's "condition or circumstances" actually were "such as to endanger [her] welfare," as the department had alleged, petitioner concludes that the court lacked subject matter jurisdiction to rule on the parentage dispute.

---

[5] The Court of Appeals concluded that the juvenile court "had subject matter jurisdiction" because child had been "taken into protective custody" at the outset of the case. *C. M. H.*, 301 Or App at 496. The court relied on ORS 419B.157, which provides that "'the jurisdiction of the juvenile court of the county in which a child is taken into protective custody shall attach from the time the child is taken into custody.'" *Id.* (quoting ORS 419B.157). Given our conclusion that the case came within the scope of the juvenile court's jurisdiction under ORS 419B.100(1), we do not address whether ORS 419B.157 or any other statute supplies an additional source of juvenile court subject matter jurisdiction.

As described above, the Court of Appeals rejected petitioner's challenge to the judgment, but did so without specifically analyzing whether the department's pending petition was sufficient to bring the case within the scope of the juvenile court's subject matter jurisdiction. *C. M. H.*, 301 Or App at 496. In the course of its analysis, however, the Court of Appeals observed that the juvenile code uses the term "jurisdiction" to refer to multiple, distinct legal concepts. *Id.* at 495-96. The first legal concept is "the juvenile court's authority to act at all—often referred to as subject matter jurisdiction." *Id.* at 495. But the code also uses the term "jurisdiction" to refer to the "the juvenile court's determination to assert jurisdiction over a child," which is a determination that causes "a series of complex statutes and proceedings [to] come into play." *Id.* at 495-96 (internal quotation marks omitted).[6] The court explained that, whereas a challenge to the court's subject matter jurisdiction can be raised at any time, a challenge to the court's decision "to exercise its subject matter jurisdiction" generally must be raised through a preserved claim of error. *Id.* And the court concluded that the juvenile court's determination on the merits of the department's ORS 419B.100(1) allegations was "not a prerequisite for that court's authority to act at all, *viz.*, for the court to exercise its subject matter jurisdiction." *Id.* at 496.

Shortly before the petitioner filed her opening brief in this court, however, the Court of Appeals decided another case raising a similar challenge under ORS 419B.100(1) and, in that case, expressly rejected the proposition that that statute confers subject matter jurisdiction on the juvenile court only after the court has determined that the child falls within one of the specified categories. *Dept. of Human Services v. K. W.*, 307 Or App 17, 32, 476 P3d 107 (2020). In *K. W.*, a mother contended that she was entitled to raise an unpreserved challenge to the juvenile court's determination under ORS 419B.100(1) that her child's "'condition or circumstances [were] such as to endanger the welfare of the person or of others.'" *Id.* at 19 & n 1 (quoting ORS 419B.100(c)). The

---

[6] As discussed below, the two uses of "jurisdiction" described by the Court of Appeals are not the only ways in which the juvenile code uses the term "jurisdiction." *See* 368 Or at 110.

Court of Appeals acknowledged that it had previously construed ORS 419B.100 in a way that supported the mother's contention. *Id.* at 19 (citing *Dept. of Human Services v. D. D.*, 238 Or App 134, 138, 241 P3d 1177 (2010)). But it described that prior decision as "irreconcilable" with the discussion of "jurisdiction" that the court had set out in its opinion in this case, and the court in *K. W.* reasoned that its earlier opinion in *D. D.* had mistakenly "fused together" two distinct meanings of "jurisdiction." *K. W.*, 307 Or App at 24, 35.

The Court of Appeals concluded in *K. W.* that ORS 419B.100(1) refers to the juvenile court's subject matter jurisdiction, as petitioner contends. *Id.* at 32. But the court rejected the argument that ORS 419B.100(1) limits the juvenile court's subject matter jurisdiction to cases in which the court has determined that the child actually falls within one of the listed categories. *Id.* at 32-33. Petitioner recognizes that her proposed construction of ORS 419B.100(1) is identical to the construction that the Court of Appeals rejected in *K. W.* and, thus, she asks us effectively to overrule *K. W.*[7] We decline to do so, however, because we agree with the conclusion of the Court of Appeals in *K. W.*

A.   *Juvenile Court Background*

Before turning to our analysis of ORS 419B.100(1), it is helpful to provide a general overview of the nature and authority of Oregon's juvenile courts. Under the modern statutory framework, the "juvenile court" is part of the circuit court.[8] Each juvenile court is officially the "Juvenile Department" of the particular circuit court in which it is located, and the judges of the circuit court exercise the

---

[7] Although *K. W.* differs from this case in that the juvenile court had adjudicated the allegations in the department's petition, we do not understand petitioner's argument to depend on any distinction between the lack of a determination on the merits of the petition, as in this case, and an allegedly insufficient determination, as was the case in *K. W.* 307 Or App at 19.

[8] For purposes of simplicity, this opinion uses the term "juvenile court" to refer to the court acting as a juvenile court and the term "circuit court" to refer to all contexts in which the court is not acting as a juvenile court. We recognize, however, that there are a few counties in Oregon in which a county court retains judicial authority and in which the juvenile court is part of the county court. *See* ORS 5.020 ("The county courts of counties from which no transfer of jurisdiction is made under ORS 3.260 or 3.265 or other provisions of law shall have all juvenile court jurisdiction, authority, powers, functions and duties.").

jurisdiction and authority of the juvenile court. *See* ORS 419B.090(1) (providing that "[t]he juvenile court is called 'The _____ Court of _____ County, Juvenile Department'"); ORS 3.260(1) ("The circuit courts and the judges thereof shall exercise all juvenile court jurisdiction, authority, powers, functions and duties.").

Yet the juvenile court is distinct in several significant ways. As emphasized throughout this opinion, the juvenile court possesses "exclusive original jurisdiction" over certain cases involving a person under the age of 18. ORS 419B.100(1). Indeed, if a proceeding is pending in a circuit court and "it is ascertained that the age of the person who is the subject of the proceeding is such that the matter is within the exclusive jurisdiction of the juvenile court," then the proceeding must be transferred to the juvenile court. ORS 419B.124.

In addition, ORS chapter 419B assigns to the juvenile court unique authority over the life of a child who comes before it, beginning with the authority to determine that a particular child falls within one of the categories specified in ORS 419B.100(1)—a determination that requires the court to make the child "a ward of the court."[9] ORS 419B.305(1) (requiring the juvenile court to hold a hearing on a "petition alleging that a child [falls within one of the categories] under ORS 419B.100"); ORS 419B.328(1) (specifying that "[t]he court shall make a child found to be within [one of the categories in] ORS 419B.100 a ward of the court"). For a child who has been made a "ward of the court," the juvenile court is authorized to take a variety of actions to safeguard the ward, including directing that the ward be placed in the legal custody of persons other than the ward's parents, ORS 419B.331; overseeing the development and implementation of a permanency plan for the ward, ORS 419B.476; and even terminating the parental rights of the ward's parents, ORS 419B.500.

---

[9] Because the result of a determination that a particular child falls within one of the categories specified in ORS 419B.100(1) is that the juvenile court must make the child a ward, this opinion refers to that determination as a "wardship determination." *See* ORS 419B.328(1) ("The court shall make a child found to be within [one of the categories in] ORS 419B.100 a ward of the court.").

Moreover, proceedings in juvenile court are conducted in ways that differ significantly from proceedings in circuit court. In particular, proceedings under ORS chapter 419B are governed by special rules of practice and procedure, rather than by the Oregon Rules of Civil Procedure. ORS 419B.800(1) ("ORS 419B.800 to 419B.929 govern procedure and practice in all juvenile court proceedings under this chapter. The Oregon Rules of Civil Procedure do not apply in these proceedings."). And both the state and the department are expressly given the status of parties in proceedings under ORS 419B.100. ORS 419B.875(1). Thus, even when a proceeding in juvenile court addresses the type of dispute that—in a different case—would be resolved by a proceeding in circuit court, the juvenile court proceeding is governed by different rules, and the state and the department may directly participate as parties.

Since 1993, the statutes governing the juvenile courts have been divided into three chapters. Or Laws 1993, ch 33; *see Dept. of Human Services v. T. L.*, 358 Or 679, 699, 369 P3d 1159 (2016) (describing 1993 revisions as "a comprehensive reorganization of the juvenile code"). ORS chapter 419B has been assigned the title "Juvenile Code: Dependency," and proceedings under that chapter are commonly referred to as "dependency proceedings." *See, e.g.*, *T. L.*, 358 Or at 687-88 (discussing the right to counsel in "dependency proceedings"). In addition, the juvenile code provides for juvenile court authority over juvenile "delinquency" in ORS chapter 419C and sets out provisions applicable to both "dependency" and "delinquency" in ORS chapter 419A.

The grant of "exclusive original jurisdiction" to the juvenile court dates to 1959, when the legislature enacted a comprehensive juvenile code comprising a single set of statutes to govern both dependency and delinquency proceedings. Or Laws 1959, ch 432; *see State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 567-70, 857 P2d 842 (1993) (explaining the 1959 comprehensive revision that overhauled piecemeal legislation enacted from 1907 onward into a comprehensive code). The 1959 code included the predecessor to ORS 419B.100, which provided: "The juvenile court has exclusive

original jurisdiction in any case involving a person who is under 18 years of age and" falls within one of the specified categories, which included categories for both dependency and delinquency. *Former* ORS 419.476 (1959), *repealed by* Or Laws 1993, ch 33, § 373;[10] *State ex rel Juv. Dept. v. Smith*, 316 Or 646, 651, 853 P2d 282 (1993) (explaining that *former* "ORS 419.476(1)(c) originally was enacted in 1959, as part of a major revision of the entire juvenile code"). As part of the 1993 reorganization, the legislature split the grant of "exclusive original jurisdiction" from *former* ORS 419.476(1) into ORS 419B.100(1), governing juvenile court jurisdiction over dependency, and ORS 419C.005(1), governing juvenile court jurisdiction over delinquency.[11] Or Laws 1993, ch 33, §§ 53, 149.

B.    *The Nature of the Juvenile Court's "Exclusive Original Jurisdiction"*

This court has never expressly addressed the nature of the "exclusive original jurisdiction" that is conferred on the juvenile court by ORS 419B.100(1), but we turn to that question now. The pertinent text of ORS 419B.100(1)[12] provides that

"the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(a)   Who is beyond the control of the person's parents, guardian or other person having custody of the person;

"(b)   Whose behavior is such as to endanger the welfare of the person or of others;

---

[10] We cite *former* ORS 419.476 in this opinion without specifying a year because, although the statute was amended between enactment and repeal, the amendments are not pertinent to our analysis.

[11] ORS 419C.005(1) grants the juvenile court "exclusive original jurisdiction in any case involving a person who is under 18 years of age and who has committed an act that is a violation, or that if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city." Although the provision appears to parallel ORS 419B.100(1), we undertake no independent analysis of ORS 419C.005(1).

[12] The "jurisdiction" described in ORS 419B.100(1) is subject to specified exceptions that are not relevant to our analysis here.

"(c)   Whose condition or circumstances are such as to endanger the welfare of the person or of others;

"(d)   Who is dependent for care and support on a public or private child-caring agency that needs the services of the court in planning for the best interest of the person;

"(e)   Whose parents or any other person or persons having custody of the person have:

"(A)   Abandoned the person;

"(B)   Failed to provide the person with the care or education required by law;

"(C)   Subjected the person to cruelty, depravity or unexplained physical injury; or

"(D)   Failed to provide the person with the care, guidance and protection necessary for the physical, mental or emotional well-being of the person;

"(f)   Who is a runaway;

"(g)   Who has filed a petition for emancipation pursuant to ORS 419B.550 to 419B.558; or

"(h)   Who is subject to an order entered under ORS 419C.411(7)(a)."

As with all questions of statutory construction, we apply the analytical framework described in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), with the "paramount goal" of discerning the intent of the legislature. Under that framework, we primarily consider the text and context of a statute, because "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes," but we also consider legislative history "where that legislative history appears useful to the court's analysis." *Id.* (internal quotation marks omitted). Given the history of ORS 419B.100(1), as described above, we are concerned both with the intent of the 1959 Legislative Assembly—which originally enacted the text at issue—and the intent of the 1993 Legislative Assembly—which reenacted the relevant text as specifically applicable to juvenile dependency matters but without substantive change.

1.  *"Exclusive original jurisdiction" as used in ORS 419B.100(1) refers to subject matter jurisdiction.*

The first issue that we must address is petitioner's contention that the legislature intended "exclusive original jurisdiction" to describe the juvenile court's subject matter jurisdiction. Petitioner urges us to adopt that portion of the Court of Appeals' analysis in *K. W.* that explains why it concluded that the phrase refers to subject matter jurisdiction. The department does not specifically argue otherwise, although it contends that the scope of the juvenile court's subject matter jurisdiction is broader than just the cases in which a petition under ORS 419B.100(1) has been filed and that ORS 419B.100(1) "merely sets out the circumstances in which the juvenile court's jurisdiction is exclusive."[13] This case does not call upon us to determine whether the scope of a juvenile court's subject matter jurisdiction is broader than the categories of cases over which ORS 419B.100(1) confers "exclusive original jurisdiction." With respect to the questions that this case presents, we conclude that the Court of Appeals in *K. W.* correctly understood the juvenile court's "exclusive original jurisdiction" to be exclusive subject matter jurisdiction.

The opportunity for dispute regarding the meaning of the juvenile court's "exclusive original jurisdiction" under ORS 419B.100(1) arises out of the varying ways that courts and legislatures use the term "jurisdiction." Used one way, the term can refer to subject matter jurisdiction, which is the scope of proceedings that a court may hear and over which the court may exercise judicial power. *See Multnomah County Sheriff's Office v. Edwards*, 361 Or 761, 777-78, 399 P3d 969 (2017) (explaining that the term "jurisdiction" can refer to "subject-matter jurisdiction," which means that the court possesses "'judicial power to act'" (quoting *State v. Nix*, 356 Or 768, 780, 345 P3d 416 (2015))); *State v. Terry*, 333 Or 163, 186, 37 P3d 157 (2001) (explaining that questions about "the scope of proceedings that may be heard by a particular court" present questions about the court's "[s]ubject matter

---

[13] The department contends that ORS 419B.090(1), which provides that the juvenile court "exercises jurisdiction as a court of general and equitable jurisdiction," describes the scope of the juvenile court subject matter jurisdiction.

jurisdiction"). A court's order or judgment in a case falling outside the scope of the court's subject matter jurisdiction generally may be challenged "at any time and any place, whether directly or collaterally," because the parties cannot consent to (or waive) subject matter jurisdiction. *Multnomah County*, 361 Or at 778 (internal quotation marks omitted); *accord Shriners Hospitals for Children v. Cox*, 364 Or 394, 401-02, 434 P3d 422 (2019).

Other questions of "jurisdiction," however, focus more narrowly on a court's authority to take *particular action* in a case that comes within the scope of the court's subject matter jurisdiction. One of those other uses of "jurisdiction" refers to a court's authority to adjudicate the obligations of a particular party—generally referred to as "personal jurisdiction." *See Robinson v. Harley-Davidson Motor Co.*, 354 Or 572, 576, 596, 316 P3d 287 (2013) (trial court correctly dismissed complaint against defendant over whom court lacked personal jurisdiction). Finally—using a looser sense of the term—"jurisdiction" sometimes is used to refer to the court's authority to grant the relief requested in a particular case. *See Oregon Farm Bureau v. Thompson*, 235 Or 162, 192-93, 384 P2d 182 (1963) (in the context of a court's exercise of "equitable jurisdiction," explaining that "'a distinction must be made between an entire lack of matter of equitable cognizance and cases within the field of equitable jurisdiction, in which an element essential to complete jurisdiction is lacking'" (quoting *Hudson v. Goldberg*, 123 Or 339, 342, 262 P 223 (1927) (further citation omitted))); *Garner v. Garner*, 182 Or 549, 562, 189 P2d 397 (1948) ("Although a court may have jurisdiction of the subject matter and the parties, its act or order may, nevertheless, be in excess of its jurisdiction, as being something which it has no power to do[.]" (Internal quotation marks omitted.)). Unlike challenges to subject matter jurisdiction, challenges to one of the other forms of "jurisdiction"—authority to take a particular action in a particular case—generally will be considered waived if not properly raised in the trial court. *See Shriners*, 364 Or at 402 (explaining that, "unlike subject matter jurisdiction, the defense[] of lack of personal jurisdiction *** will be 'waived' if a defendant does not assert [it] in a timely fashion" (citing ORCP 21 G)); *Oregon Farm*

*Bureau*, 235 Or at 188 (explaining that "a party, through failure to make timely protest, may waive his objection to the lack of jurisdiction of a court of equity over the subject matter if the court's jurisdiction is defective in some degree but not wholly lacking").

Unfortunately, as the Court of Appeals recognized, judicial opinions have sometimes conflated those distinct concepts of jurisdiction, creating additional confusion. *K. W.*, 307 Or App at 24; *see also Arbaugh v. Y & H Corp.*, 546 US 500, 510-11, 126 S Ct 1235, 163 L Ed 2d 1097 (2006) (observing that "[j]urisdiction *** is a word of many, too many, meanings" and explaining that judicial opinions sometimes obscure the differing meanings by dismissing for "lack of jurisdiction" without explicitly addressing whether the problem was a lack of subject matter jurisdiction or only a failure of the particular claim (internal quotation marks omitted)). The occasional lack of clarity about the sense in which an opinion is using the term "jurisdiction" is perhaps understandable given the lack of practical significance in many cases: If a party is raising a meritorious and preserved challenge to a judgment, then it may seem unnecessary to analyze whether the judgment should be set aside because the lower court acted contrary to its authority under the circumstances of a particular case or should be set aside because the lower court lacked subject matter jurisdiction over the case at all. *See Shriners*, 364 Or at 402 (emphasizing that the practical distinction between the two types of "jurisdiction" is that, if a court has subject matter jurisdiction, a challenge to another type of "jurisdiction" will be "'waived' if a defendant does not assert [it] in a timely fashion"). But we recognize that the lack of clarity in judicial opinions complicates the task for parties and lower courts that seek to derive principles of subject matter jurisdiction from those judicial opinions.

Compounding the opportunity for confusion, the Oregon juvenile code uses the term "jurisdiction" in ways that seemingly include each of the varying meanings described above, and more. *See, e.g.*, ORS 419B.803(1) (providing that "[a] juvenile court having subject matter jurisdiction has jurisdiction over" specified parties); ORS 419B.234(3) (providing that a guardian *ad litem* can "[a]gree to *** jurisdiction").

Despite the varying ways in which the term "jurisdiction" can be used, however, the text and context of ORS 419B.100(1) persuade us that the legislature used the phrase "exclusive original jurisdiction" to refer to the juvenile court's subject matter jurisdiction. As the Court of Appeals observed in *K. W.*, "'exclusive' and 'original' when modifying 'jurisdiction' ordinarily means 'subject matter jurisdiction.'" 307 Or App at 27-28 (discussing definitions of "exclusive jurisdiction" and "original jurisdiction" as legal terms of art). Moreover, setting out categories of cases that come within the scope of the juvenile court's "exclusive original jurisdiction," as ORS 419B.100(1) does, is a usage consistent with subject matter jurisdiction. *See Terry*, 333 Or at 186 ("Subject matter jurisdiction defines the scope of proceedings that may be heard by a particular court of law ***."). Thus, the text of the provision supports petitioner's argument that ORS 419B.100(1) addresses the juvenile court's subject matter jurisdiction.

Although this court has never expressly articulated that understanding of the juvenile court's "exclusive original jurisdiction," at least one of our early decisions under the juvenile code indicates that this court necessarily understood the grant of "exclusive original jurisdiction" to the juvenile court as a grant of exclusive *subject matter* jurisdiction. The case is *Brady v. Gladden*, 232 Or 165, 374 P2d 452 (1962). This court reasoned in *Brady* that the legislature's grant of "'exclusive original jurisdiction'" to the juvenile courts in *former* ORS 419.476(1)(a) deprived the circuit court of authority to hear the matter at all. 232 Or at 166-68 (quoting *former* ORS 419.476). In *Brady*, a petitioner who had pleaded guilty in a criminal case in the circuit court at the age of 17 sought post-conviction relief on the ground that the nonjuvenile circuit court had lacked "jurisdiction" to consider the case. *Id.* at 166. As explained above, the juvenile code at that time combined dependency and delinquency into a single set of statutes, and *former* ORS 419.476(1)(a) conferred on juvenile courts "exclusive original jurisdiction" over both dependency and delinquency matters. This court cited legislative history indicating that the 1959 juvenile code was drafted to change the prior jurisdictional scheme, under which the general circuit courts retained subject

matter jurisdiction over cases involving juveniles charged with crimes. *Brady*, 232 Or at 167 (citing Report of the Legislative Interim Committee on Judicial Administration, Part II Juvenile Law, 11 (Jan 1959)). Relying on a statement in the Interim Committee report that the intent of the 1959 juvenile code was "'to eliminate any doubt that the juvenile court is the court where cases involving juveniles must be initiated,'" this court in *Brady* concluded that "the legislature intended the same thing." *Id.* (quoting Report of the Legislative Interim Committee on Judicial Administration at 15). Thus, this court held, the sentence imposed by the circuit court was "void" because the circuit court had "lacked jurisdiction to subject [the petitioner] to indictment." *Id.* at 168. In other words, this court concluded that subject matter jurisdiction over the case belonged exclusively to the juvenile court.

We thus agree with petitioner, and with the Court of Appeals' conclusion in *K. W.*, that those "case[s] involving a person who is under 18 years of age and" falls within one of the categories in ORS 419B.100(1) are cases that come within the juvenile court's exclusive subject matter jurisdiction. ORS 419B.100(1); *see K. W.*, 307 Or App at 32 (reasoning that "it is true that *** ORS 419B.100 governs the juvenile court's subject matter jurisdiction in dependency cases" (internal quotation marks omitted)). But that conclusion does not end our analysis.

2.  *Juvenile court subject matter jurisdiction does not depend on a determination that a child actually falls within one of the ORS 419B.100(1) categories.*

Petitioner also contends that a juvenile court lacks subject matter jurisdiction under ORS 419B.100(1) unless and until it determines that a child actually falls within one of the categories over which the juvenile court has "exclusive original jurisdiction." We understand petitioner's contention to be based on a concern that parentage disputes between private parties, which otherwise are resolved in circuit court, might be resolved unnecessarily in juvenile court, with juvenile court procedural rules and the department actively advocating for one party. *See* ORS 109.070(2) (providing for a challenge to the rebuttable presumption of

parentage "in an action or proceeding by either spouse"); *see also* 368 Or at 105 (describing distinction between proceedings to resolve a dispute when the court is acting as a juvenile court and proceedings to resolve a comparable dispute in circuit court). Petitioner's concern about the scope of the juvenile court's subject matter jurisdiction is relevant only if the legislature shared her concern, and that is the issue to which we will next turn. Before we do, however, we note that petitioner does not contend that parentage disputes are entirely beyond the scope of proceedings that the juvenile court is authorized to hear because she recognizes that ORS 419B.395 grants the juvenile court authority to resolve some parentage disputes. Rather, petitioner's concern addresses the conditions that are necessary for the juvenile court to exercise that authority. *See Terry*, 333 Or at 186 (explaining that questions about a court's "[s]ubject matter jurisdiction" are questions about "the scope of proceedings that may be heard by a particular court").

To resolve the scope of the juvenile court's subject matter jurisdiction, we turn again to an examination of the text and context of ORS 419B.100(1), including this court's prior constructions of the statutory predecessor. Based on that examination, we conclude that the legislature did not intend to condition the juvenile court's subject matter jurisdiction on a wardship determination—that is, a determination that a child falls within one of the categories listed in ORS 419B.100(1).

a.    Text

Petitioner contends that the text of ORS 419B.100(1) reflects two wording choices that indicate a legislative intent to confer subject matter jurisdiction on the juvenile court only after the court has determined that a child actually falls within one of the categories over which the juvenile court has "exclusive original jurisdiction." But petitioner's textual arguments are not persuasive.

Petitioner first argues that ORS 419B.100(1) is lacking a significant word: the statute does not provide that the juvenile court has "exclusive original jurisdiction in any case involving *allegations that* a person who is under 18 years of

age" falls within one of the specified categories. But neither does the statute provide that the juvenile court has jurisdiction only over cases involving a "determination" or an "adjudication" that a child falls within one of the specified categories. Indeed, at least one of the categories over which the juvenile court has "exclusive original jurisdiction"—cases involving a person under 18 "[w]ho has filed a petition for emancipation," ORS 419B.100(1)(g)—necessarily is defined by the contents of the petition. Thus, petitioner's focus on the legislature's omission of "allegation" from the text of ORS 419B.100(1) does little to inform our understanding of what the legislature intended.

Petitioner additionally points to the legislature's use of present tense verbs in ORS 419B.100(1) to describe most of the categories of case over which the court has exclusive original jurisdiction. *See, e.g.*, ORS 419B.100(1)(c) (referring to a person "[w]hose condition or circumstances *are* such as to endanger the welfare of the person or of others" (emphasis added)). According to petitioner, that verb choice indicates that the legislature intended ORS 419B.100(1) to provide subject matter jurisdiction to the juvenile court over only those cases in which the court has determined that a child actually falls within one of the specified categories. But petitioner's argument overlooks the independent significance of a juvenile court's determination that a child actually falls within one of the specified categories: The effect of that determination is that the child "shall" be made "a ward of the court." ORS 419B.328(1). Thus, the use of the present tense may convey a legislative intent that the wardship determination must be based on the child's *present* conditions and circumstances. *See, e.g.*, *Dept. of Human Services v. K. V.*, 276 Or App 782, 791, 369 P3d 1231 (2016) (concluding that, to prove that a child's welfare is endangered, the department must prove that "risk of harm is present at the time of the hearing and not merely speculative" (internal quotation marks omitted)). In any event, the legislature's description of what the juvenile court must determine for a child to be made a ward says almost nothing about whether the court's subject matter jurisdiction is limited to cases in which the court has made that determination or, instead— as this court often has held—extends to cases in which the

allegations of the pleadings, if proved, would authorize the court "to grant the prayer of the petition." *See, e.g., Dean et al v. First Nat'l Bank et al*, 217 Or 340, 350, 341 P2d 512 (1959) (determining whether a case falls within a court's subject matter jurisdiction by considering whether a pleading "avers facts" that are sufficient "to authorize [the court] to grant the prayer of the petition"); *Garner*, 182 Or at 562 (distinguishing between whether a court has "jurisdiction of the subject matter" and whether the conditions of the particular case "authorize the exercise of [the court's] general power" (internal quotation marks omitted)).

> b.   Context of related statutes

The context of other related statutes is more informative. That context suggests that the legislature intended that a juvenile court's subject matter jurisdiction would extend to cases involving allegations that a child falls within one of the categories specified in ORS 419B.100(1) before the court determines the merits of the allegations. The most directly pertinent statute is ORS 419B.124, which requires the transfer to juvenile court of certain proceedings that are pending in a circuit court. That statute provides that, as soon as "it is ascertained that the age of the person who is the subject of the proceeding is such that the matter is within the exclusive jurisdiction of the juvenile court," then the case must be transferred to juvenile court. *Id*. Notably, ORS 419B.124 does not require the circuit court to have conducted the proceeding and ascertained the merits of the matter before transfer to the juvenile court is required. That transfer requirement thus suggests that the legislature intended certain proceedings involving a person under 18 to come within the exclusive subject matter jurisdiction of the juvenile court before any determination on the merits has been made.

The statutory scope of a juvenile court's *personal* jurisdiction over parties to a dependency proceeding supplies additional context for our understanding that the legislature intended cases to come within the subject matter jurisdiction of the juvenile court before that court has conducted a hearing and determined the merits of a petition under ORS 419B.100(1). For proceedings under ORS chapter

419B, the legislature has specified that "[a] juvenile court *having subject matter jurisdiction* has jurisdiction over" the child and the child's parents and guardians, among other parties. ORS 419B.803(1)(c) (emphasis added) (providing for "jurisdiction over" any "party specified in ORS 419B.875(1)," among others); ORS 419B.875(1)(a) (providing that "[p]arties to proceedings in the juvenile court under ORS 419B.100" include the "child or ward" and the "parents or guardian of the child or ward"). The fact that the legislature has defined the scope of the juvenile court's personal jurisdiction over the child and the child's parents in that way is significant because it is a well-established "constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." *Wiles v. Wiles*, 211 Or 163, 168, 315 P2d 131 (1957). And we presume that the legislature was aware of that constitutional rule when it adopted the juvenile code. *See Blachana, LLC v. Bureau of Labor and Industries*, 354 Or 676, 691, 318 P3d 735 (2014) (explaining that "[w]e presume that the legislature was aware of existing law" related to the subject of a proposed statute). We infer that the legislature intended the wardship determinations of the juvenile court to satisfy that constitutional requirement and thus provided for juvenile court jurisdiction over the parties whose rights with respect to a child are being adjudicated through a proceeding under ORS 419B.100. But jurisdiction over the parties is possible under ORS 419B.803(1)(c) only if the legislature also intended that the juvenile court would "hav[e] subject matter jurisdiction" before it makes the wardship determination. Therefore, the scope of the juvenile court's personal jurisdiction informs our understanding about the scope of the juvenile court's subject matter jurisdiction.

c.   Context of prior case law

Our understanding of the scope of the juvenile court's subject matter jurisdiction also is informed by this court's established approach to determining whether a particular case comes within the scope of a court's subject matter jurisdiction. *See, e.g.*, *Lindell v. Kalugin*, 353 Or 338, 349, 297 P3d 1266 (2013) ("Case law existing at the time of the adoption" of a rule or statute "forms a part of the context.").

By the time the legislature adopted ORS 419B.100(1)—and even before the legislature adopted its predecessor, *former* ORS 419.476—this court had repeatedly held that the allegations and the pleadings could be sufficient to bring a case within the scope of a court's subject matter jurisdiction. *See Wilson v. Matthews*, 291 Or 33, 39, 628 P2d 393 (1981) (in the context of "exclusive jurisdiction" of former district courts over forcible entry and detainer actions, explaining that "[t]he trial court's jurisdiction is determined from the plaintiff's complaint"); *Dean*, 217 Or at 349-50 (in the context of probate court jurisdiction, deciding whether a case falls within the scope of a court's subject matter jurisdiction by considering whether a pleading "avers facts" that are sufficient "to authorize [the court] to grant the prayer of the petition"); *Barnes v. Eastern & Western Lbr. Co.*, 205 Or 553, 612, 287 P2d 929 (1955) (in the context of jurisdiction of a court of equity, explaining that "the complaint in this case conferred jurisdiction upon the equity court, provided nothing was included in it which indicated a lack of jurisdiction"); *Wright and Jones v. Edwards*, 10 Or 298, 307 (1882) (in the context of probate court jurisdiction to determine title to property, explaining that "mere errors or defects, although material in some respects," will not undermine a final judgment, but that "the case is different where there is an entire want of facts, pre-requisite to jurisdiction, disclosed upon the face of the petition"). We presume that, when the legislature first enacted a statute conferring "exclusive original jurisdiction" on the juvenile courts, and again when it enacted a statute conferring that "exclusive original jurisdiction" specifically for dependency proceedings, the legislature was aware of our well-established approach of resolving questions of subject matter jurisdiction by considering the allegations and pleadings presented to the court—not by how those allegations and pleadings are ultimately resolved on the merits. *See Blachana,* 354 Or at 691 (presuming "that the legislature was aware of existing law" related to the subject of proposed statute).

In fact, some of this court's decisions under the 1959 juvenile code necessarily applied that rule when determining whether a particular case came within the juvenile court's "exclusive original jurisdiction" under *former* ORS

419.476. For example, in *Brady*, which we discussed above, this court held that the circuit court "lacked jurisdiction to subject [the child] to indictment" because the matter was one for the "'exclusive original jurisdiction'" of the juvenile court. 232 Or at 166, 168 (quoting *former* ORS 419.476). In other words, this court necessarily concluded that the allegations of the indictment were sufficient to bring the case within the exclusive subject matter jurisdiction of the juvenile court.

We reached a similar conclusion in *State v. Scurlock*, 286 Or 277, 279, 593 P2d 1159 (1979), in which the district attorney indicted an 18-year-old for first-degree assault after intentional delay in pursuing allegations of criminal conduct related to a motor vehicle collision that occurred when the individual was under 18. Without any determination on the merits of the criminal allegations against the individual, the circuit court concluded that the matter fell within the juvenile court's exclusive original jurisdiction and dismissed the indictment. *Id.* This court affirmed, concluding that the 1959 juvenile statutes, including *former* ORS 419.476(1), "require[d] that [the] case be heard initially by the juvenile court." *Id.* at 281. As with our assessment of *Brady*, we understand that holding in *Scurlock* to necessarily reflect a conclusion that the allegations were sufficient to bring the case within the scope of the juvenile court's "exclusive original jurisdiction."

Petitioner argues, however, that two of this court's prior cases support her contention that the juvenile court lacks subject matter jurisdiction under ORS 419B.100(1) until it determines that the case involves a child who actually falls within one of the specified categories. She cites *Logsdon v. State and Dell*, 234 Or 66, 71, 73, 380 P2d 111 (1963), in which this court held that there had been a "lack of jurisdiction" to support the juvenile court's wardship determination because there had been a lack of "*allegation* []or proof of neglect or other facts to authorize" the juvenile court "to declare these children wards of the juvenile court." (Emphasis added.) She also cites *Medina v. Medina*, 243 Or 629, 632, 415 P2d 169 (1966), in which this court, similarly, reversed an order awarding the custody of children to a county agency because "[t]here is no *pleading* or evidence

in this case to support jurisdiction of the Juvenile court over the Medina children." (Emphasis added.) Admittedly, petitioner has identified cases in which this court was less than clear about the type of "jurisdiction" that was lacking, but neither case suggests that the juvenile court would have lacked subject matter jurisdiction if the pleadings before it had alleged a basis for wardship.

In fact, at least one early case under the 1959 juvenile code necessarily rejected petitioner's proposal that the wardship determination is what brings a case within the scope of the juvenile court's subject matter jurisdiction. In *Chandler v. State*, 230 Or 452, 454-55, 370 P2d 626 (1962), a father sought to collaterally attack a juvenile court's clearly inadequate determination that placed the father's child "within the jurisdiction of [the juvenile] court" under *former* ORS 419.476. This court rejected the father's collateral attack, emphasizing: "It must be remembered that the word 'jurisdiction' as applied to this proceeding is not the kind of jurisdiction that gives the court the power to act at all." *Id.* at 455. Rather, the opinion explains:

> "In the sense the word is used in [*former*] ORS 419.476, which specifies the causes which permit the court to make the child a ward of the court, a finding of jurisdiction is a *** determination that the child is dependent or delinquent. It is not the kind of jurisdictional question that can be raised at any stage of the proceedings."

*Id.* In other words, the father's challenge in *Chandler* to the "determination that the child is dependent or delinquent" under *former* ORS 419.476 was not a challenge to the court's subject matter jurisdiction—instead, it was a challenge to what now would be considered a wardship determination. *Id.*; *see also Multnomah County*, 361 Or at 778 (explaining that "judicial orders entered when a court lacked subject-matter jurisdiction may be attacked at any time and any place, whether directly or collaterally," but that "other orders may be challenged only directly, in a preserved claim of error" (internal quotation marks omitted)).

Although *Chandler, Brady,* and *Scurlock* were decided under *former* ORS 419.476, they supply relevant context for understanding what the 1993 Legislative

Assembly intended when it reorganized the juvenile code and adopted the "exclusive original jurisdiction" provision that is specifically applicable to dependency proceedings in ORS 419B.100(1). As explained above, at that time of those decisions, the juvenile court's authority over both delinquency and dependency was governed by *former* ORS 419.476(1). *See* 368 Or at 105-06 (describing history). When the legislature reorganized the juvenile code into separate chapters in 1993, it used the same terms to describe the juvenile court's "exclusive original jurisdiction" in the new statute addressing juvenile dependency, ORS 419B.100(1).[14] Thus, we infer that the legislature intended its grant of subject matter jurisdiction to the juvenile court over cases described in ORS 419B.100(1) to operate like the identical grant of subject matter jurisdiction in *former* ORS 419.476. And we presume that the legislature enacted the current grant of "exclusive original jurisdiction" with an awareness that this court's decisions in *Brady* and *Scurlock* had identified proceedings as coming within the "exclusive original jurisdiction" of the juvenile court based on allegations that the child fell within one of the specified categories. *See Blachana,* 354 Or at 691 (presuming "that the legislature was aware of existing law" related to the subject of proposed statute).

#### d.   Synthesis

Having considered the text of ORS 419B.100(1) and the relevant context, we reject petitioner's contention that the legislature intended to condition the juvenile court's subject matter jurisdiction on a determination that a child in fact falls within one of the categories specified in the statute. Instead, we conclude that the legislature intended the juvenile court's subject matter jurisdiction generally to extend to cases in which the allegations and relief sought in a pending petition invoke the court's authority to determine

---

[14] The legislative history of the 1993 reorganization of the juvenile code reflects that drafters of the reorganization intended to "*make[] no substantive change in the law*, and in fact retain[] all previous statutory language." Testimony, Senate Committee on Judiciary, SB 257, Feb 15, 1993, Ex B (Executive Summary of Senate Bill 257, appendix B to testimony of Judge Stephen B. Herrell, chair of the Juvenile and Family Justice Project, which drafted SB 257 (emphasis in original)).

whether a child actually falls within one of the categories specified in ORS 419B.100(1), *i.e.*, to make a wardship determination.

   3.   *The juvenile court had subject matter jurisdiction in this case.*

   Given that understanding of the nature of the juvenile court's "exclusive original jurisdiction" under ORS 419B.100(1), we reject petitioner's contention that the juvenile court lacked subject matter jurisdiction over this case.[15] The department's petition alleged that S was a person under 18 whose "condition or circumstances * * * [were] such as to endanger the welfare of the person or of others" based on specific factual allegations as to S's biological mother, biological father, and petitioner. Those allegations describe a matter over which the juvenile court has "exclusive original jurisdiction" under ORS 419B.100(1), and the petition requested that the court take action that it would be statutorily authorized to take under the juvenile code if it determined that the allegations were proved. We therefore conclude that the pending petition was sufficient to give the juvenile court subject matter jurisdiction over the case when it adjudicated petitioner's parentage status, a determination authorized under ORS 419B.395.[16]

   We recognize that petitioner disputes whether this case satisfies the statutory criteria for the juvenile court to have addressed the parentage dispute—because she contends that ORS 419B.395 authorizes the court to rule on disputes about a child's parentage only after it makes a wardship determination. As explained above, however, that argument presents a challenge to the court's exercise in this case of authority that the juvenile court undisputedly possesses, not a challenge to whether the juvenile court has authority to resolve parentage disputes at all, and thus not

---

[15] Petitioner does not contend that the state brought the petition in bad faith or purely to insert itself into a parentage dispute that otherwise would have been resolved without advocacy by the state. Thus, we have no occasion to consider whether such circumstances might affect the juvenile court's subject matter jurisdiction.

[16] We do not endorse the suggestion of the Court of Appeals in this case that ORS 419B.395 is a source of "subject matter jurisdiction to adjudicate parentage." *C. M. H.*, 301 Or App at 497.

a challenge to the court's subject matter jurisdiction. 368 Or at 113; *see Terry*, 333 Or at 186 (explaining that questions about a court's "[s]ubject matter jurisdiction" are questions about "the scope of proceedings that may be heard by a particular court"). To the extent that petitioner asks this court to reach her unpreserved argument that the juvenile court erroneously exercised its authority to resolve the parentage dispute under the circumstances of this particular case, we decline to do so; we conclude only that the juvenile court did not lack subject matter jurisdiction when it determined petitioner's parentage status.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.